**HARMAN ELECTRICAL CONSTRUCTION CO., a Texas corporation,**
**Plaintiff,**

v.

**CONSOLIDATED ENGINEERING CO.,**
**Inc., a Maryland corporation,**
**et al., Defendants.**

**SAM P. WALLACE CO., Inc., a Texas**
**corporation, Plaintiff,**

v.

**CONSOLIDATED ENGINEERING CO.,**
**Inc., a Maryland corporation,**
**et al., Defendants.**

**Civ. A. Nos. 4191, 4192.**

United States District Court,
D. Delaware.

Aug. 29, 1972.

---

**394**

Howard M. Berg, Berg & Taylor, Wilmington, Del., Luther P. House, Jr., and

Kent P. Smith, of Smith, Currie & Hancock, Atlanta, Ga., for plaintiffs.

Robert H. Richards, III, Richards, Layton & Finger, Wilmington, Del., J. Cookman Boyd, Jr., of Sauerwein, Boyd & Decker, Baltimore, Md., for defendant Consolidated Engineering Co.

Ernest S. Wilson, Jr., Wilson & Russell, Wilmington, Del., for defendants Alico and American International Realty Co.

## OPINION

STAPLETON, District Judge.

These actions are presently before the Court on the motion of defendant Consolidated Engineering Co., Inc. for a stay pending arbitration pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

Plaintiffs, two Texas corporations, separately brought actions to collect sums assertedly due them for work performed as subcontractors in the construction of the Wilmington Tower building. The relief prayed for was the impressment of a materialman's lien on the building pursuant to 25 Del.C. § 2701, et seq.[1] and an *in personam* money judgment against the defendants. The defendants were the owner of the building, American International Realty Corp. ("Realty"), a Delaware corporation, the former owner American Life Insurance Co. ("Alico"), a Delaware corporation, and the general contractor, Consolidated Engineering Co., Inc. ("Consolidated"), a Maryland corporation. The cases satisfy the jurisdictional requirements of 28 U.S.C. § 1332.

Alico filed a cross-claim against Consolidated seeking per diem damages as set forth in the contract for late completion of the structure, consequential dam-

---

1. Plaintiffs' description of these claims is somewhat misleading. A mechanics lien is a creature of statute. It is created under Delaware law by the filing of a "statement" with the Prothonotary of the Superior Court. 25 Del.C. § 2711. Plaintiffs concede that they have heretofore filed such a statement. The subsequent proceedings stipulated by the statute are proceedings in that court. I need not now decide whether plaintiffs can proceed in this Court on their "mechanics lien" theory.

ages to compensate for its continuing inability to fully lease its building, which is allegedly a result of the late completion, and indemnification for any judgment it might suffer in this action.

After moving to stay, Consolidated responded with a cross-claim against Alico. That claim set out six grounds for recovery: (1) the construction contract was based on a mutual mistake of fact and should be "rescinded or reformed" to reflect the belief of the parties; (2) Consolidated was harmed by justifiably relying upon material misrepresentations made by Alico to induce Consolidated to agree to certain contract provisions; (3) Alico breached an express and implied warranty that the plans and specifications from which the structure would be built were free from defect; (4) Alico breached implied and express warranties by unreasonably disrupting and changing the sequence of work and providing plans that were deficient in particular ways; (5) Alico breached a promise to pay for additional work ordered by it during the course of construction; and (6) Alico has wrongfully failed to pay money, held as "retainage," which was due to Consolidated on completion of the building.

On November 10, 1971, an order was entered upon the consent of all parties staying all proceedings in these cases until further application of any party. The settlement negotiations that followed proved unproductive and on April 20, 1972 Alico moved this Court to dissolve the stay; Consolidated then promptly moved to stay these proceedings under 9 U.S.C. § 3.

The adverse parties on this motion are the general contractor, Consolidated, and the owner, Alico; plaintiffs have not opposed the motion to stay and, indeed, support it.[2]

2. The contracts between plaintiffs and Consolidated provide:
"Article III.

. . .
. .

The Subcontractor agrees to be bound by and to perform all work hereunder, according to the terms and provisions of the agreement between the contractor and the owner, and the drawings and specifications as far as the same are applicable to the work to be performed under this subcontract, and to assume toward the contractor in reference to said work all the obligations and responsibilities that the contractor by these documents assumes toward the owner in reference thereto."
"Article 19 — ARBITRATION: Should the parties hereto fail to agree upon the amount of any damages whatsoever resulting from the default, misconduct or negligence of the Subcontractor, or as to the interpretation of this Contract or as to any other matter pertaining thereto, any or all of these matters shall be determined by reference to three disinterested arbitrators, one to be appointed by each of the parties of this Contract, and the third by the two thus chosen, the decision of any two of whom shall be final and binding upon the Contractor and Subcontractor. The Subcontractor shall, however, if required by the Contractor, proceed with all work pending the results of arbitration as above. Each of the parties hereto shall pay one-half of the expenses of the arbitrators' fees."

Article 19 covers the subcontractor's claims against Consolidated for the contract price. Arguably, Article III, read together with the Consolidated contract with Alico, evidence a commitment on the part of the subcontractors to arbitrate claims against Alico. Nowhere, however, is there evidence of any commitment on the part of Alico to arbitrate claims of subcontractors against it. Indeed, the prime contract expressly provides that it creates no contract relationship between Alico and subcontractors. This is not fatal, however, to the motion to stay. The primary obligor so far as the subcontractors are concerned is Consolidated. To the extent it recovers the amount claimed from it, there will be no recovery against Alico. 25 Del.C. § 2725. The parties asserting these claims do not oppose the stay and, as will appear hereafter, the primary controversies in this litigation are arbitrable ones. Under these circumstances, I do not consider it to be in the interests of the parties or the administration of justice to have litigation of peripheral issues proceed in this Court while the core issues are pursued elsewhere.

Section 3 of the United States Arbitration Act, 9 U.S.C. § 3, provides in part:

"If any suit . . . be brought in any court of the United States upon any issue referable to arbitration . . . the court . . . upon being satisfied that the issue is referable to arbitration, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . providing the applicant for the stay is not in default in proceeding with arbitration."

In Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the Supreme Court held that the stay provisions of § 3 apply only to those contracts of a kind specified in §§ 1 and 2 of the Act, namely those in "admiralty" or those evidencing transactions in "commerce." This transaction comes within the statutory phrase "commerce among the several states" and meets this threshold requirement.[3] 9 U.S.C. § 1; see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 and n. 7, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1966). None of the parties here asserts otherwise.

Having been satisfied that "commerce" is involved, two major issues remain for our determination: first, are the issues involved referable to arbitration under the agreement of the parties and second, if so, has the applicant waived his right to demand arbitration by a default.

The understanding of the parties is evidenced by two writings. The first, the Agreement, states in part:

"The Contractor agrees . . . to do all things necessary for the proper construction and completion of the work shown and described in the Specifications entitled: 'American Life Insurance Company Building, Wilmington, Delaware, July, 1965,' (as amended) and enumerated in the attached Schedule 1.

The said Specifications, including the General Conditions consisting of Articles 1 to 69, and the drawings enumerated in Schedule 1 together with this Agreement, constitute the Contract; the Drawings and Specifications being as fully a part thereof and hereof as if hereto attached or herein repeated."

The second writing, the General Conditions, incorporated into the contract by the foregoing language, provides in Article 31 that:

" . . . should either party to the Contract suffer damages because of the wrongful act or neglect of the other party or of anyone employed by him, claim shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and shall be adjusted by agreement or arbitration."

Article 40 provides the procedure for the resolution of disputes "subject to arbitration under the Contract."

It is argued by Alico that Article 31 makes arbitrable only tort claims arising from mishaps during the construction of the building. This is a needlessly narrow construction of the arbitration agreement and does considerable injury to the language of the relevant contract provision.

The language "suffer damages because of any wrongful act" can be applied as well to damages resulting from a contract breach. A later phrase in the same sentence demonstrates that this possible construction was in fact the one

---

3. The building was designed and its construction overseen by a New York architect. The general contractor, Consolidated, was a Maryland corporation with its principal place of business in that state and two of the major subcontractors were Texas corporations with their principal places of business in Texas. The interstate flow of goods and services in the construction of this multi-million dollar structure was substantial. Affidavits uncontradicted in the record support this finding.

the parties intended. Article 31 requires that a claim for such damages as the claimant may have suffered be made in writing "within a reasonable time . . . and not later than the final payment, *except as expressly stipulated otherwise in the case of faulty work or materials. . . .*" (emphasis added). The effect of the italicized words is to permit Article 20, which provides for remedies for defects due to faulty materials and workmanship appearing within two years of completion, to operate. For present purposes the import of the proviso in the arbitration clause is simple:[4] if the construction for which Alico argues is adopted the italicized words are rendered completely nugatory. There would be no need to except breach of contract or breach of warranty claims for faulty work from the notice requirement of Article 31 unless that Article were otherwise broad enough to cover such claims.

If the words "wrongful act or neglect," comprehend breaches of implied or express warranties of the quality of construction not excluded by the proviso, it follows that they must also comprehend breaches of implied and express warranties as set out in Consolidated's claims three and four and breaches of Alico's contractual duties as alleged in claims five and six.[5]

Consolidated's claim two which alleges misrepresentation by one in a position of superior knowledge sounds in tort and satisfies the requirement of a claim arising from a "wrongful act or neglect." [6]

The breach of contract claims asserted in Alico's cross-claim, similarly, are within the scope of Article 31.

 Consolidated's claim one, which alleges mutual mistake of fact and prays for "restitution or reformation of the contract," fits less nicely within the terms "wrongful act or neglect." It may be that this claim also comes within the arbitration clause,[7] but this Court is not here called upon to decide that question as it would be if this were an action to compel arbitration of claim one under § 4 of the Arbitration Act.

 In cases of this character where a substantial majority of related claims

---

4. Article 20 does not itself apply to any of the claims here asserted.

5. See *e. g.*, Lesser Towers, Inc. v. Roscoe-Ajax Construction Co., 271 Cal.App. 2d 675, 77 Cal.Rptr. 100 (Ct.Apps.1969).

6. 2 Harper & James, Law of Torts, § 7.7 n. 1 and 7 (1956). A claim that a contract which includes an arbitration clause was induced by misrepresentations will not affect the arbitrability of disputes that fit within the arbitration clause. It is only when it is alleged specially that the arbitration clause itself was fraudulently induced that a court must pass on its validity as a condition precedent to submission of disputes fitting thereunder to arbitration. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1966).

7. The legal theory upon which this claim rests is not altogether clear to the Court from the complaint. Consolidated does make a claim for a money judgment for the benefit conferred on Alico. Ordinarily, when a non-executory contract may be rescinded for mutual mistake or otherwise, an innocent party who has conferred a benefit has a *quantum meruit* claim for a breach of an implied promise to pay for the reasonable value of the benefit conferred. Hudson Structural Steel Co. v. Smith & Rumery Co., 110 Me. 123, 85 A. 384 (Sup.Ct.1912); 3 Black, Rescission and Cancellation, § 705. The refusal of the party benefited to honor his implied promise might be a "wrongful act" as used in Article 31.

Because of the severable nature of arbitration agreements, Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2nd Cir. 1959), and the federal policy favoring agreements to arbitrate, where, as here, the mistakes of facts alleged do not go to the existence of the arbitration clause or to facts that reasonably might have been material in the parties determination to include such a clause, then—as a severable part of the agreement—the arbitration device might still be invoked despite the claim for rescission. *Cf.*, Prima Paint Corp. v. Flood & Conklin Mfg. Co., *supra*.

arising out of a series of transactions governed by contract are referable to arbitration under that contract, notions of judicial economy dictate that the entire suit be stayed pending resolution of those issues subject to arbitration. *Cf.* Miletic v. Holm & Wonsild, 294 F.Supp. 772 (S.D.N.Y.1968). The power to so act "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L.Ed. 153 (1936). See also, Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm., 387 F.2d 768 (3rd Cir. 1967).

Article 39 does not, as Alico suggests, require a contrary conclusion. That Article provides:

"a. *General*: The Architect shall, within a reasonable time, make decisions on all claims of the Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents.

(1) The Architect's decision, in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.

(2) Except as above or as otherwise expressly provided in the Contract Documents, all the Architect's decisions are subject to arbitration.

(3) If, however, the Architect fails to render a decision within ten days after the parties have presented their evidence, either party may then demand arbitration. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but shall not disturb or interrupt such proceedings except where such decision is acceptable to the parties concerned.

b. *Architect's Decisions Final*: The Architect's decisions shall be final in matters pertaining to interpretations of plans and specifications, certification of value of work performed or omitted, amount of payment to be withheld, substitution of materials or subcontractors."

■ It may be that this Article, when read together with Article 31, makes presentation to the architect and either an architect's decision or the passage of ten days prerequisites to a valid demand for arbitration. Alico does not suggest, however, that these prerequisites have not been met.[8] Indeed, Alico's argument to the Court regarding Article 39 assumes that the architect has heretofore ruled. It asserts that the present matter is governed by Subsection (b) of Article 39 and that the architect's determinations of the claims must end the matter. I disagree. Based upon the pleadings, the claims here in issue do not come within Subsection (b).[9] Article 39, accordingly, provides no basis for denying the motion to stay.[10]

---

8. Consolidated's affidavits affirmatively indicate that a presentation was made and state facts from which it can reasonably be inferred that Consolidated's claims were either denied or not ruled upon.

9. It may well be that in the course of the arbitration, determinations made by the architect within the scope of Subsection (b) may become relevant and that the arbitrators will be required to accept the architect's findings and interpretations. This does not, however, mean that the claims asserted are not arbitrable under Article 31.

10. Alico's reliance on Article 18 is also misplaced. Article 18 provides that in case of delays the architect may extend "the time for completion" for such period as he may decide reasonable and that his decision "shall be final." The Article also expressly provides that it "does not exclude the recovery of damages for delay by either party under other provisions of the contract document." I do not read Article 18 as a bar to arbitration of the claims here presented. It is true that Alico has a claim for liquidated damages. Here also, if it is entitled to recover on this claim the archi-

There remains only the question whether the applicant is in default under the arbitration agreement. Article 31 of the General Conditions provides that written notice of a claim must be given within a reasonable time of its first observation but not later than final payment. Article 40 requires that notice of demand for arbitration shall be filed with the other party within a reasonable time after the dispute has arisen. Both of these requirements are met here.

According to Alico's brief, the "first observance" of Consolidated's problems occurred in July of 1969. (Alico Br. p. 11). Uncontradicted affidavits establish that written claims were submitted to Alico on or about July 16, 1969. Formal demand for arbitration under Article 40 was not made until January 7, 1972, after an extended period of negotiations proved fruitless.[11] Consolidated's claims were not finally rejected by Alico until sometime after October 26, 1971. It was upon this rejection that the Article 40 dispute arose. The period between the date when the dispute arose and the written demand for arbitration was not unreasonable. Moreover, Alico has shown no prejudice to it from the delay in making a demand.

Consolidated demanded arbitration of the Alico claims in its January 7, 1972 letter. There is nothing in the record indicating that Consolidated was notified of Alico's claims prior to the instigation of Alico's cross-claim on August 20, 1971. In view of the negotiations between the parties that were going forward at that time, albeit perhaps on other issues, Consolidated's demand for arbitration was not so unreasonably delayed as to constitute a default under the contract.

Consolidated did not waive its right to demand arbitration by its action in this law suit. It refrained from filing an answer prior to its motion to stay on April 24, 1972, and, in its cross-claim filed thereafter, reserved its right to arbitration. The goals sought to be gained through the Federal Arbitration Act ought not to be foreclosed by an expansive view of what constitutes a waiver. Where as here the movant did nothing inconsistent with his claimed right to arbitrate prior to his motion to stay and his later actions attempted to preserve that right there can be no waiver. See Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968); General Guaranty Insurance Co. v. New Orleans General Agency, Inc., 427 F.2d 924 (5th Cir. 1970).

The motion to stay these proceedings will be granted; submit order.

tect's determination of "the time for completion" may be binding upon the parties for purposes of determining those liquidated damages, but this does not render Alico's claim to such damages non-arbitrable.

11. Article 31 provides for notice within a reasonable time of a claim and that the matter in dispute "shall be adjusted by *agreement or arbitration.*" (emphasis added) The inclusion of the word agreement indicates clearly that the parties intended a period of negotiations to follow a claim. This intention must be considered in construing what is a reasonable time under Article 40.