C. P. ROBINSON CONSTRUCTION
COMPANY et al., Plaintiffs,

v.

NATIONAL CORPORATION FOR HOUS-
ING PARTNERSHIPS, Defendant.

No. C–74–15–WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

April 26, 1974.

Michael J. Lewis and James G. White, of White & Crumpler, Winston-Salem, N. C., for plaintiffs.

Robert W. Spearman, H. Hugh Stevens, Jr., Raleigh, N. C., for defendant.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

This action is presently before the Court on the motion of the defendant, National Corporation for Housing Partnerships (NCHP), for a stay pending arbitration pursuant to Section 3 of the United States Arbitration Act, 9 U.S.C. § 1 et seq., and the plaintiffs' motion to remand to state court for lack of federal jurisdiction. Oral arguments were made before the Court by both parties on April 19, 1974. After due consideration of the arguments of both parties and on the basis of the entire file in this case, the Court grants the defendant's motion for a stay of proceedings pending arbitration and directs the parties to proceed to arbitration in accordance with the terms of the partnership agreement.

Plaintiffs and defendant entered into a written partnership agreement on March 11, 1971, forming the Bingham Heights Limited Partnership (Bingham). The two plaintiffs, C. P. Robinson Construction Company and C. P. Robinson, Jr., are general partners of Bingham. C. P. Robinson Construction Company is a North Carolina corporation, having its principal office at Rural Hall, North Carolina. C. P. Robinson, Jr., is a resident of Forsyth County, North Carolina. Bingham is named as a nominal plaintiff and is a limited partnership organized under the laws of North Carolina and having its principal office at Rural Hall, North Carolina. The defendant, NCHP, is the sole limited partner of Bingham and is a corporation having its principal office in the District of Columbia.

The limited partnership was created to construct a low-income housing project of 160 units in Asheville, North Carolina. The construction and permanent loans of the project are insured by the Department of Housing and Urban Development. The parties to this action made use of communication systems carried across state lines. The mortgage lender and the surety company overseeing the project are out-of-state businesses. Some of the labor and large quantities of materials used in the project are supplied from outside the State of North Carolina. (Major appliances are shipped from Louisville, Kentucky; steel is shipped from Cleveland, Ohio; cement is shipped from Knoxville, Tennessee.) NCHP is a partner in 131 partnerships spread across thirty-two states and is regularly involved in business across state lines.

The defendant, NCHP, was required by the terms of the limited partnership agreement to pay in excess of $70,000 at the final closing of a loan on real estate. That obligation matured in July of 1973 and the defendant failed to pay. On September 7, 1973, the defendant gave notice to C. P. Robinson, Jr., and C. P. Robinson Construction Company that they should be removed as general part-

ners under terms of the partnership agreement because of material violations of their fiduciary duty as partners of Bingham. The defendant set forth a number of claimed violations by plaintiffs including a charge that Robinson Construction Company was unlawfully receiving payments for construction of the project inasmuch as neither the Company nor C. P. Robinson, Jr., had a contractor's license as required by Chapter 87 of the North Carolina General Statutes. Defendant claimed by reason of the breach of fiduciary duty by the general partners, there was no valid debt owing from NCHP to Bingham and Robinson Construction Company.

The general partners denied the removal request of NCHP on September 11, 1973. In turn, NCHP submitted the matter to the American Arbitration Association on November 20, 1973, pursuant to an arbitration clause in the partnership agreement.[1] The Association accepted the issues submitted on November 27, 1973.

On December 19, 1973, the plaintiffs sought and obtained, *ex parte*, a temporary restraining order from the Superior Court in Forsyth County, North Carolina, prohibiting the defendant from "any further proceedings or attempted proceedings in arbitration." On December 20, 1973, the plaintiffs filed a complaint seeking dissolution of the partnership, contribution and damages from the defendant, and a permanent injunction restraining the defendant from proceeding with arbitration. The defendant removed the action to this court pursuant to 28 U.S.C. § 1441. Jurisdiction of the federal court is based on diversity of citizenship, 28 U.S.C. § 1332.

The defendant urges this Court to stay the proceedings because the issue is referrible to arbitration under Title 9,

Section 1 et seq. The plaintiffs contend that the Court lacks jurisdiction to entertain the suit because diversity of citizenship is not present. Additionally, the plaintiffs claim that if federal jurisdiction exists, the substantive law of North Carolina should be applied to the arbitration issue since removal was had under diversity of citizenship and the partnership agreement states its interpretation shall be in accordance with the laws of the State of North Carolina.

■ The plaintiffs have challenged the jurisdiction of the federal court to provide a forum for this suit. Such a challenge demands careful scrutiny. The United States Arbitration Act does not provide an independent basis of federal jurisdiction. It is only when the federal court has some other basis of jurisdiction such as diversity of citizenship or a federal question that Title 9 can be applied. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959); McDevitt & Street Co. v. Georgia Building Authority, 343 F. Supp. 1238 (D.C.Ga.1972); Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc., 334 F.Supp. 1013 (D.C. N.Y.1971).

■ Neither party contends that the jurisdictional amount has not been properly alleged in the pleadings. The face of the plaintiffs' complaint states that all plaintiffs in this action are residents of North Carolina and the defendant is a corporate resident of the District of Columbia. However, plaintiffs cite the case of Fletcher v. Hamlet, 116 U.S. 408, 6 S.Ct. 426, 29 L.Ed. 679 (1886), as standing for the proposition that where a suit is by or against a partnership and diversity of citizenship is claimed, citizenship is determined by that of the individual members. The plaintiff claims application of that principle to the case at bar operates to defeat diversity of

---

1. Clause 9.08(b) of the Bingham Limited Partnership Agreement states:

Any dispute with respect to a charge brought by an Objecting Partner under subsection (a) of this Section shall be decided by arbitration in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association. The award rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof. The arbitrator shall give notice of his decision in writing to all Partners.

citizenship. The reasoning is that NCHP is a District of Columbia resident and a limited partner of Bingham which gives Bingham, as one of the plaintiffs, a citizenship in the District of Columbia. Since a plaintiff and the defendant have the same citizenship, diversity is destroyed.

Under the applicable North Carolina statute a limited partner, such as NCHP, " . . . is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership." Uniform Limited Partnership Act, N.C.G.S. § 59–26 (1941). In the case of a third party in litigation with a limited partnership, diversity could be obtained if all the general partners had citizenship different from the third party. Identity of citizenship between the third party and a limited partner would not be fatal to federal jurisdiction. Colonial Realty Corporation v. Bache and Co., 358 F.2d 178 (2d Cir. 1966).

▉▉ This case involves the exception in the statute cited above in that it is a suit to enforce a limited partner's liability to the partnership. Therefore, NCHP has properly been made a defendant in the proceedings. However, the fact that Bingham is named as a nominal plaintiff in this action for dissolution does not place the defendant in a position of suing himself. The residency of a limited partner, being sued for dissolution and contribution by the general partners is not made the residency of the plaintiff merely by virtue of the limited partnership being named as a

nominal plaintiff. In such a case, the citizenship of the limited partnership is determined by the citizenship of each of the individual general partners and diversity of citizenship exists if the limited partner's citizenship is different from that of all general partners. Any other rule would oust federal jurisdiction from all dissolution suits between general and limited partners. In addition, it would require the Court to take the theoretically untenable position that in dissolution suits one party could, at once, be recognized as a plaintiff and a defendant for jurisdictional purposes.

The Court rejects such a rule, and finds that diversity of citizenship does exist and the matter in controversy exceeds the sum of $10,000. Therefore, the Court has jurisdiction over this suit and the plaintiffs' motion to remand to state court is denied.

▉ The defendant, NCHP, claims that an arbitrable issue exists between the parties under the terms of the arbitration clause in the partnership agreement—the arbitration clause being valid and enforceable under Title 9. The defendant moves for a stay of court proceedings and an order to compel arbitration under 9 U.S.C. §§ 3 and 4. The plaintiffs take the position that the written agreement for arbitration is not one evidencing a transaction in commerce and Title 9 would not apply. The plaintiffs would have the Court apply the substantive law of North Carolina which, at the time the partnership agreement was made, did not permit enforcement of contracts to arbitrate future controversies.[2] Therefore, if North

---

2. Arbitration and Award, N.C.G.S. § 1–544 (1927), stated in part, "Two or more parties may agree in writing to submit to arbitration, in conformity with the provisions of this article, any controversy existing between them at the time of the agreement to submit." From a very early date, North Carolina courts held that contracts to submit future disputes to arbitration, thus ousting the jurisdiction of the courts, were invalid. Skinner v. Gaither Corp., 234 N.C. 385, 67 S.E.2d 267 (1951); McDonough Const. Co. v. Hanner, 232 F.Supp. 887 (M.

D.N.C.1964); Swaim v. Swaim, 14 N.C. 24 (1831). North Carolina has adopted a new statute permitting an agreement to submit future disputes to arbitration, See N.C.G.S. § 1–567.2 (1973), but this article applies only to agreements made on or after August 1, 1973. N.C.G.S. § 1–567.19 (1973). Since the partnership agreement in the case at bar was entered into on March 11, 1971, the law in effect at the making of the contract controls. Pike v. Trust, 274 N.C. 1, 161 S.E.2d 453 (1968).

**450**

Carolina statutory law controls the facts of this case, the parties would not have entered into a valid arbitration agreement and the Court could not compel arbitration. Cook v. Kuljian, 201 F.Supp. 531 (D.C.Pa.1962).

The central legal question to be resolved by the Court is whether the United States Arbitration Act applies to the arbitration agreement made by the parties. If the Act does apply to the facts of this case, then federal law giving vitality to arbitration clauses would supersede state law prohibiting such clauses.[3]

9 U.S.C. §§ 2 and 3 provide for a stay of judicial proceedings when four conditions are met. First, there is a written provision for arbitration in the contract. Second, the contract evidences a transaction involving commerce. Third, the Court is satisfied that the issue involved in suit is referrible to arbitration under the written agreement. Fourth, the applicant for the stay is not in default in proceeding with such arbitration.

As evidenced in footnote 1, there is a written arbitration agreement in the parties' contract. The issue involves breach of fiduciary duty by the general partners and is referrible to arbitration under the contract terms [9.08(a)(2) (B)]. The applicant defendant, NCHP, is not in default in proceeding with such arbitration as the facts recited earlier indicate. The remaining test is whether the contract evidences a transaction involving commerce.

Initially it is useful to examine the parties' intent in entering into an agreement with an arbitration clause. Such subjective intent of the parties is not controlling in determining if the agreement objectively evidences a transaction involving commerce, but it is illuminating as to how the parties interpreted their own contract. In this case, the plaintiffs and defendant voluntarily entered into a broad agreement to arbitrate future disputes. North Carolina statutory law, at the time the agreement was made, would not enforce future arbitration agreements. Therefore, the parties must have viewed the contract's arbitration clause as being validated by federal law, unless they sought to incorporate a useless provision into the partnership agreement.

However, the question as to whether the contract evidences a transaction in commerce must be determined by application of the statutory definition of "commerce" to the objective facts of the case. " 'Commerce', as herein defined, means commerce among the several States or with foreign nations . . . " 9 U.S.C. § 1. There is no dearth of case law on what constitutes a transaction involving commerce under Title 9. Prima Paint Corporation v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967);

---

3. "There remains the question whether such a rule is constitutionally permissible. The point is made that, whatever the nature of the contract involved here, this case is in federal court solely by reason of diversity of citizenship, and that since the decision in Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487] (1938), federal courts are bound in diversity cases to follow state rules of decision in matters which are 'substantive' rather than 'procedural,' or where the matter is 'outcome determinative.' Guaranty Trust Co. v. York, 326 U.S. 99 [65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231] (1945). The question in this case, however, is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. See Bernhardt v. Poly-graphic Co., supra, 350 U.S. [198] at 202, concurring opinion at 208 [76 S.Ct. 273, at 275 and at 279, 100 L.Ed. 199 at 204 and 208]. Rather, the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative. And it is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.' H.R.Rep.No.96, 68th Cong., 1st Sess., 1 (1924); S.Rep.No.536, 68th Cong., 1st Sess., 3 (1924)." Prima Paint Corporation v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404–405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270, 1278 (1967).

Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959); Harmon Electrical Construction Co. v. Consolidated Engineering Co., 347 F.Supp. 392 (D.C.Del. 1972); Medical Development Corporation v. Industrial Molding Corporation, 479 F.2d 345 (10th Cir. 1973); Caribbean Steamship Co. v. La Societe Navale Caennaise, 140 F.Supp. 16 (D.C.Va. 1956); McDonough Const. Co. v. Hanner, 232 F.Supp. 887 (M.D.N.C.1964); Monte v. So. Del. Co. Auth., 321 F.2d 870 (3rd Cir. 1963); Metro Industrial Painting Corp. v. Terminal Const. Co., 287 F.2d 382 (2d Cir. 1961).

 The case law definition of transactions involving commerce to which Title 9 is applicable is broad and includes trade generally between citizens of the several states, including the purchase and sale of property of all kinds and descriptions. Evidence of purchases of large quantities of building materials and fixtures from out-of-state suppliers is an undisputed part of the record of this case. The mortgage lender, surety company, and loan guarantor all have their principal place of business in states other than the state where the contract was made and was to be performed. *See* Robinson v. Bache, 227 F. Supp. 456 (D.C.N.Y.1964). Some of the labor force employed in the housing project crossed state lines in the course of their employment. In short, the Bingham Heights Limited Partnership Agreement contemplated and involved transactions in commerce as the term applies to Title 9.

It is concluded that the plaintiffs and the defendant have bound themselves to a valid arbitration agreement under the United States Arbitration Act, 9 U.S.C. § 1 et seq. An arbitrable dispute has arisen under the terms of the agreement, and the defendant, National Corporation for Housing Partnerships, applicant for the stay, is not in default in proceeding with such arbitration. Therefore, the motion of the defendant to stay the trial of the action until arbitration has been had in accordance with the terms of the Bingham Heights Limited Partnership Agreement is granted.

The defendant also seeks an order to compel arbitration of the dispute in this case, pursuant to 9 U.S.C. § 4. Under Section 4, an "aggrieved party" may petition any district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action of the subject matter of a suit arising out of the controversy between the parties, for an order to compel arbitration. The district court must hear the parties and on being satisfied that (1) the making of the agreement for arbitration is not in issue and (2) the failure to comply with the agreement is not in issue, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement.

The Court concludes that jurisdictional grounds exist under Title 28 in a civil action of the subject matter of this controversy in that there is diversity of citizenship and more than $10,000 in controversy. Neither plaintiffs nor defendant contest the fact that an agreement for arbitration was made; plaintiffs' argument centers on the legal effect of the arbitration agreement and not on whether it was, in fact, made. Plaintiffs do not contend that they have attempted to comply with the arbitration agreement, and failure to comply with the agreement to arbitrate is not in issue. Therefore, the Court grants the defendant's motion to compel arbitration and directs the parties to proceed to arbitration in accordance with the terms of the agreement.

A judgment will be entered accordingly.