**WARREN BROTHERS COMPANY,**
**Plaintiff,**

v.

**COMMUNITY BUILDING CORPORATION OF ATLANTA, INC.,**
**Defendant.**

**No. C-74-253-WS.**

United States District Court,

M. D. North Carolina,
Winston-Salem Division.

Dec. 6, 1974.

C. Thomas Ross, Winston-Salem, N. C., for plaintiff.

John L. Sarratt, Greensboro, N. C., for defendant.

## MEMORANDUM ORDER

WARD, District Judge.

This action is presently before the Court on the motion of the defendant, Community Building Corporation of Atlanta, Inc. (CBC), for a stay pending arbitration pursuant to Section 3 of the

United States Arbitration Act, 9 U.S.C. § 1 et seq., and the plaintiff's motion to remand to state court for lack of federal jurisdiction. After due consideration on the basis of the entire file in this case, the Court grants the defendant's motion for a stay of proceedings pending arbitration and directs the parties to proceed to arbitration in accordance with the terms of their contract.

Plaintiff, Warren Brothers Company, is a division of Ashland Oil, Inc., a Kentucky corporation, and is authorized to do business in North Carolina. Defendant is a Georgia corporation and is also authorized to do business in North Carolina. Plaintiff, a subcontractor, originally filed its complaint on April 16, 1974, in the North Carolina Superior Court in Forsyth County alleging that CBC, a contractor, owed it $49,387.16 for stone base and asphalt paving work completed on British Woods Apartments, an apartment project located in Forsyth County, North Carolina. Plaintiff at that time also named Lambe-Young-Jones, Inc., a North Carolina real estate corporation for whom CBC was constructing the apartments, as defendant. As the action was originally brought, it was not removable to the federal courts since actions, other than those involving a federal question, are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Since Lambe-Young-Jones, a North Carolina corporation, was named as defendant, the action was not removable. On July 18, 1974, plaintiff filed its notice of dismissal with prejudice as to Lambe-Young-Jones because of the latter's posting of a 125% corporate surety bond to discharge the plaintiff's record lien, pursuant to N.C.G.S. § 44A-16(6). With the dismissal of Lambe-Young-Jones, there remained an action between a Kentucky corporation (Warren Brothers) and a Georgia corporation (CBC). CBC filed its petition for removal on August

15, 1974,[1] asserting jurisdictional amount and diversity of citizenship under 28 U.S.C. § 1332, removability "to the district court of the United States for the district and division embracing the place where such action is pending . . . ." under 28 U.S.C. § 1441(a), and authority for the delayed petition for removal under 28 U.S.C. § 1446(b).

Defendant filed a motion to stay judicial proceedings and for an order compelling arbitration on September 12, 1974, and this was followed on September 18, 1974, by plaintiff's motion to remand. It appears to the Court that there are three basic issues to be determined: (1) Whether the action is properly removable from the state court to the federal court on the plaintiff's dismissal with prejudice of Lambe-Young-Jones; (2) If so, whether the Middle District of North Carolina is the proper federal district in which to bring the action; and (3) If so, whether the proceedings should be stayed pending arbitration.

*I. Removability*

■■ Defendant asserts that this matter is arbitrable under the Federal Arbitration Act since the contract between it and the plaintiff contained a general arbitration clause. However, before this Court can decide that question it must first determine whether the action is removable from the state to the federal court. The Federal Arbitration Act does not provide an independent basis for federal jurisdiction since it does not confer federal question jurisdiction upon federal courts. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1969), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1959); C. P. Robinson Construction Co. v. National Corp. for Housing Partnerships, 375 F.Supp. 446 (M.D.N.C.1974); McDevitt & Street Co. v. Georgia Building Authority, 343 F. Supp. 1238 (N.D.Ga.1972); Joseph

---

1. This was within the thirty days required by 28 U.S.C. § 1446(b).

Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc., 334 F.Supp. 1013 (S.D.N.Y.1971). Therefore, before a federal court can apply the Act, it must already have jurisdiction over the subject matter through another source such as diversity of citizenship or federal question. Here, there is the requisite $10,000 jurisdictional amount and diversity of citizenship between all the parties involved. However, a special rule obtains when a case which is once begun in the state court is sought to be removed to the federal court. Title 28, United States Code, Section 1441(b), requires that, in such a case, none of the defendants in the case can be a resident of the state in which the action is brought. Since Lambe-Young-Jones was originally named as a defendant, the action was definitely not removable until the plaintiff filed a notice of dismissal with prejudice as to Lambe-Young-Jones. Whether the action became removable after the dismissal with prejudice is the question which the Court now determines.

Prior to 1949, 28 U.S.C. § 1446(b), simply outlined the time limit (20 days) in which a defendant had to file his petition for removal from state to federal court after receipt of the initial pleading or service of summons. The law as to removability at that time was that a case was removable if the resident defendant was dismissed from the action by the voluntary act of the plaintiff but that it was not removable if the resident defendant was dismissed by the act of the court or the resident defendant himself and thus not representing the voluntary act of the plaintiff. American Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 35 S.Ct. 355, 59 L. Ed. 594 (1915). The statute was amended in 1949 to cover situations in which an action not initially removable, later became removable and the following paragraph was added:

If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.[2]

There has been some speculation that the addition of the foregoing paragraph may have changed the voluntary-involuntary rule of removability such that a case could be removed even if the plaintiff's dismissal of the resident defendant was involuntary. Viles v. Sharp, 248 F. Supp. 1019 (W.D.Mo.1965). The United States District Court for the Southern District of Mississippi in Lyon v. Illinois Central Ry. Co., 228 F.Supp. 810, 811 (S.D.Miss.1964), in ruling that an action was removable on the basis of the state court's dismissal of the resident defendant, held that "[t]here is nothing in this statute [28 U.S.C. § 1441(b)] from which it can be properly inferred that Congress intended that a removal could be effected only in the event the plaintiff voluntarily did something which removed the local defendant from the case."

However, the overwhelming majority of decisions have held otherwise. Weems v. Louis Dreyfus Corp., 380 F.2d 545 (5th Cir. 1967); Ennis v. Queen Insurance Co. of America, 364 F.Supp. 964 (W.D.Tenn.1973); Continental Oil Co. v. PPG Industries, Inc., 355 F.Supp. 1183 (S.D.Tex.1973); Oklahoma State Union of Farmers' Educational and Cooperative Union of America v. Hartford Fire Insurance Co., 307 F.Supp. 415 (W.D.Okla.1970); McAfee v. Phillips Petroleum Co., 300 F.Supp. 651 (D.Montana 1969); Hum v. Missouri Pacific R. Co., 292 F.Supp. 65 (E.D.Ark.1968); Lauf v. Nelson, 246 F.Supp. 307 (D. Montana 1965); Putterman v. Daveler, 169 F.Supp. 125 (D.Delaware 1958); Stone v. Foster, 163 F.Supp. 298 (W.D. Ark.1958). Most federal courts have endorsed the rule that the 1949 amendment

---

**2.** In 1965, Pub.L. 89–215 substituted "thirty days" for "twenty days" wherever appearing in the 1949 amendment.

to 28 U.S.C. § 1446(b) did not abolish the voluntary-involuntary rule and that "[i]f . . . plaintiff states a nonremovable case in his initial complaint, involuntary changes will not make the case removable; they must have been brought about by the voluntary act of the plaintiff." 1A Moore's Federal Practice ¶ 0.168 [3.–5], at 487 (2d ed. 1974). The court in Weems v. Louis Dreyfus Corp., *supra,* 380 F.2d at 548, pointed out that the *Lyon* view was erroneous for two reasons:

> . . . first, it fails to take account of legislative history which we believe is highly significant to the determination of the extent which the amendment changed the existing law; and second, it fails to read the amendment in light of the previously developed case law.

The legislative history is contained in an explanatory note of the House Report:

> "The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. *This is declaratory of the existing rule laid down by the decisions.* (See for example, Powers v. Chesapeake etc., Ry. Co., 169 U.S. 92 [, 18 S.Ct. 264, 42 L.Ed. 673].)"

2 U.S.Code Cong.Serv. p. 1268, 81 Cong., 1st Sess. (1949). In light of this language, we must reject the Lyon reasoning, . . . that the amendment did bring about a change in the existing case law. . . .

[I]t would seem that the voluntary-involuntary rule was not affected by the amendment, and therefore remains part of today's applicable case law.

*See also* Squibb-Mathieson International Corp. v. St. Paul Mercury Insurance Co., 238 F.Supp. 598 (S.D.N.Y.1965).

All of the cases cited above applying the voluntary-involuntary rule after the 1949 amendment to 28 U.S.C. § 1446(b) involved fact situations in which the case was not initially removable because of lack of diversity of citizenship of the parties (i. e., resident plaintiff versus resident defendant and nonresident defendant) and not situations where, as here, the case was not initially removable because of the second sentence in 28 U.S.C. § 1441(b) (i. e., a case is not removable from state to federal court if a defendant is a resident of the state in which the action was originally brought). However, the reasoning to be applied is identical since the statute on its face indicates that it covers virtually any situation in which an action not initially removable later becomes removable and not solely to cases initially not removable because of lack of diversity of citizenship. Title 28, United States Code, Section 1446(b) applies to any action not originally removable, whether because of subsequent acquisition of diversity of citizenship, increase of amount in controversy to federal jurisdictional amount, appearance of a federal question, or, as here, the dismissal of a resident defendant and thus removal of the bar imposed by 28 U.S.C. § 1441(b). Therefore, the reasoning of those cases concerning the voluntary-involuntary rule is applicable to the fact situation here in which a nonresident plaintiff initially brought suit against a resident defendant and a nonresident defendant.

Plaintiff Warren Brothers Company contends that its dismissal with prejudice as to Lambe-Young-Jones was not voluntary and that therefore defendant CBC should not be allowed to remove the action to federal court. Plaintiff admits that it filed the notice of dismissal with prejudice but contends that it had no choice since, under N.C.G.S. § 44A–16(6), Lambe-Young-Jones was no longer a party to the action after it posted a bond of 125% to cancel plaintiff's lien. Defendant, on the other ha.. , argues

that the plaintiff acted voluntarily since the plaintiff was not obligated to file the dismissal at all and certainly was not obligated to file a dismissal with prejudice when Lambe-Young-Jones posted the bond. The defendant points out that under Rule 41(b), Federal Rules of Civil Procedure, only the court can order an involuntary dismissal and contends that the plaintiff's dismissal with prejudice as to the resident defendant Lambe-Young-Jones was actually a voluntary dismissal under F.R.C.P. 41(a)(1).

Subsection (6) of N.C.G.S. § 44A–16[3] was enacted by the North Carolina General Assembly in 1971 and is simply a means whereby a lien held by the lienor may be cancelled by the lienee by depositing with the clerk of court a corporate surety bond equal to one and one-fourth times the amount of the lien. The result is that the lien is, in effect, transferred to the bond. There is no provision in the statute that when such a bond is posted by a defendant in a suit, that the plaintiff must then file a dismissal as to that defendant. Plaintiff might just as well have retained Lambe-Young-Jones in the action in order to establish liability as owner of the apartment project. At any rate, plaintiff's filing of the notice of dismissal with prejudice had the effect of finally determining the controversy between it and Lambe-Young-Jones. In cases where the courts have applied the voluntary-involuntary rule, dismissals were generally considered involuntary and thus not removable when either the court ordered or the defendant obtained the dismissal and thus left the plaintiff with an appealable claim. Weems v. Louis Dreyfus Corp., *supra*; Continental Oil Company v. PPG Industries, Inc., *supra*; Oklahoma State Union of Farmers' Education and Cooperative Union of America v. Hartford Fire Insurance Co., *supra*; McAfee v. Phillips Petroleum Co., *supra*; Hum v. Missouri Pacific R. Co., *supra*; Stone v. Foster, *supra*. Where the plaintiff is left with an appealable claim after an involuntary dismissal of a defendant, a federal court cannot acquire jurisdiction since, if the plaintiff were successful on appeal resulting in reinstatement of the previously dismissed defendant, the federal court might lose subject matter jurisdiction after taking over the action or possibly even after rendering judgment. The basis for the voluntary-involuntary rule is that it "prevents removal of those cases in which the issue of the resident defendant's dismissal has not been finally determined in the state courts." Weems v. Louis Dreyfus Corp., *supra*, 380 F.2d at 546.

However, in this case, the action *has* been finally determined in the state courts. Plaintiff has no appealable claim. It has filed a notice of dismissal *with prejudice* as to the resident defendant Lambe-Young-Jones and that is the end of it as to that defendant. There can be no further adjudication in the state court on that issue. The Court finds that the plaintiff has taken a voluntary dismissal[4] as to the defendant Lambe-Young-Jones and that, therefore,

---

3. N.C.G.S. § 44A–16(6):
 "Whenever a corporate surety bond, in a sum equal to one and one-fourth (1¼) times the amount of the lien or liens claimed and conditioned upon the payment of the amount finally determined to be due in satisfaction of said lien or liens, is deposited with the clerk of court, whereupon the clerk of superior court shall cancel the lien or liens of record."

4. While it is not necessary to fit the plaintiff's dismissal of Lambe-Young-Jones under any particular Federal Rule of Civil Procedure, the following comment from Wright & Miller, Federal Practice and Procedure: Civil § 2369 (1971) is helpful: ". . . It is apparent on the face of the rule that Rule 41(b) is solely a defendant's remedy . . . . Voluntary dismissal by a plaintiff is governed by Rule 41(a)."

 Under the North Carolina Rules of Civil Procedure which governed the action at the time plaintiff filed its notice of dismissal with prejudice, "an action or any claim therein may be dismissed by the plaintiff without order of court . . . by filing a notice of dismissal at any time before the plaintiff rests his case . . . ." N.C.G.S. § 1A–1, Rule 41(a)(1). Plaintiff filed its

the action is properly removed to the federal court for adjudication.

## II. *Venue and Jurisdiction*

 Having determined that this action is properly removable to the federal court, this Court further finds that the proper venue for this action is the United States District Court for the Middle District of North Carolina even though neither the plaintiff nor the defendant is a resident of the area embraced by this federal judicial district. Two different rules govern venue in the federal courts depending on whether the action was brought in federal court originally or removed from the state court after being brought in the state court originally. Title 28, United States Code, Section 1391(a), is the statute applicable to actions originally filed in federal court:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or *in which the claim arose.* (Emphasis added).

The phrase "in which the claim arose" was added to Section 1391(a) in 1966. Thus, in a situation in which the action is originally filed in federal court and neither the plaintiff nor the defendant is a resident of the judicial district in which the action is filed, the district where the action is filed must be the one in which the "claim arose" in order to be proper venue. The question of where the "claim arose" then becomes a substantive question of law requiring the federal courts in diversity cases to apply state substantive law under the *Erie*[5] doctrine. Ryan v. Glenn, 52 F.R.D. 185 (N.D.Miss.1971). However, since 28 U.S.C. § 1391(a) has, even prior to amendment in 1966, referred "to venue, not jurisdiction, in actions originally *brought* in a federal district court based on diversity of citizenship . . . [,] [i]t has no application to actions removed to federal district court" from a state court. (Emphasis added). Orn v. Universal Automobile Assoc. of Indiana, 198 F.Supp. 377, 379 (E.D.Wis.1961).

 This action was originally brought in the state court and not in the federal court. In such a case, the proper venue is governed by 28 U.S.C. § 1441(a) and not by 28 U.S.C. § 1391(a). Tanglewood Mall, Inc. v. Chase Manhattan Bank, 371 F.Supp. 722 (W.D.Va. 1974); Willner v. Thompson, 285 F. Supp. 394 (E.D.N.Y.1968); Straub v. Kean, 207 F.Supp. 420 (E.D.S.C.1962). Section 1441(a) reads as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the *place where such action is pending.* (Emphasis added).[6]

notice of dismissal with prejudice on July 18, 1974. Under F.R.C.P. 41(a)(1) a plaintiff, in order to voluntarily dismiss its action without court approval, must do so before the defendant answers or files a motion for summary judgment. It would have been too late under F.R.C.P. 41(a)(1) for the plaintiff to file a voluntary dismissal since an answer had been filed by the defendant prior to the dismissal. However, the case was a North Carolina action at that time and the North Carolina Rules of Civil Procedure governed. Under N.C. Rule 41(a)(1), plaintiff was within the time limit imposed for voluntary dismissals. Thus, it appears that the plaintiff had, in essence, taken a voluntary dismissal under N.C. Rule 41(a)(1) in that the plaintiff dismissed of its own right before it rested its case.

5. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)

6. Moore's Federal Practice, Para. 0.140 [7], at 1338 (2d ed. 1974):

> "While removal jurisdiction is keyed generally . . . to original jurisdiction, the venue of a removed action is not keyed to original venue. . . . The venue of a removed action is linked territorially to the state action, since the state suit is to

There is no doubt that this action was originally brought in the state superior court of Forsyth County, North Carolina. The action was "pending" in that court when the defendant CBC filed its petition for removal. Therefore, under 28 U.S.C. § 1441(a), this federal district, which embraces Forsyth County, North Carolina, is the proper venue in which to adjudicate the matter.

### III. *Federal Arbitration Act*

Since, as held above, this Court has independent jurisdiction over the subject matter of this controversy, it may determine whether the Federal Arbitration Act, 9 U.S.C. § 1 et seq., is applicable. Incorporated by reference into the contract between the plaintiff and defendant is an arbitration clause which reads, in pertinent part, as follows:

> 7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. . . .

The first question to be determined on the arbitration issue is which "arbitration law," state or federal, is to be applied. North Carolina has enacted a Uniform Arbitration Act, N.C.G.S. § 1–567.1 et seq., which covers agreements to arbitrate future disputes. This statute has an effective date of August 1, 1973, and does not cover contracts entered into before that date. The contract between Warren Brothers and CBC was dated November 13, 1972, and, therefore, if North Carolina law is applicable, would be governed by the North Carolina law prior to enactment of N.C. G.S. § 1–567.1. Prior to N.C.G.S. § 1–567.1, arbitration agreements in North

Carolina were governed by N.C.G.S. § 1–544, et seq., and agreements to arbitrate future disputes were deemed unenforceable. Skinner v. Gaither Corp., 234 N.C. 335, 67 S.E.2d 267 (1951); McDonough Construction Co. v. Hanner, 232 F.Supp. 887 (M.D.N.C.1964). Thus, the dispute between Warren Brothers and CBC would clearly not be arbitrable if governed by North Carolina law. However, if the Federal Arbitration Act is applicable to the facts of this case, "then federal law giving vitality to arbitration clauses would supercede state law prohibiting such clauses." C. P. Robinson Construction Co. v. National Corp. for Housing Partnerships, 375 F.Supp. 446, 450 (M.D. N.C.1974). As pointed out by the court in Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra*, 271 F.2d at 409, the Federal Arbitration Act is a national substantive law which supplants state law:

> . . . [T]he Arbitration Act in making agreements to arbitrate "valid, irrevocable, and enforceable" created national substantive law clearly constitutional under the maritime and commerce powers of the Congress and . . . *the rights thus created are to be adjudicated by the federal courts whenever such courts have subject matter jurisdiction, including diversity cases, just as the federal courts adjudicate controversies affecting other substantive rights when subject matter jurisdiction over the litigation exists.* . . . [T]he body of laws thus created is substantive not procedural in character and . . . it encompasses questions of interpretation and construction as well as questions of validity, revocability and enforceability of arbitration agreements affecting interstate commerce or maritime affairs, since these two types of legal questions are inextricably intertwined. (Emphasis added).

As this Court has pointed out previously in C. P. Robinson Construction Co. v. National Corp. for Housing Partner-

be removed to the district court of the United States for the district and division

embracing the place where the state action is pending."

ships, *supra*, 375 F.Supp. at 450, in determining whether the Federal Arbitration Act is applicable to a case, the Court must find that: "First, there is a written provision for arbitration in the contract. [9 U.S.C. § 2] Second, the contract evidences a transaction involving commerce. [9 U.S.C. §§ 1 and 2] Third, the Court is satisfied that the issue involved in suit is referable to arbitration under the written agreement. [9 U.S.C. § 2] [and] Fourth, the applicant for the stay is not in default in proceeding with such arbitration. [9 U.S.C. § 3]"

■ The second requirement concerning a "transaction involving commerce" is the only one that is in contention between the parties in this action. Copies of the written agreement are included in the record before the Court and, if the Court finds that the requisite degree of interstate commerce is involved, there is no doubt that this case is referable to arbitration under the written agreement. As to the question of default, defendant originally filed its motion to stay the proceedings and compel arbitration in the state court on June 17, 1974, a few months after plaintiff filed its complaint. The rule in this Circuit is that a default

> does not automatically result from a delay or from the filing of responsive pleadings. The proper rule was set out in Batson Y. & F. M. Gr., Inc. v. Saurer-Allma GmbH-Allgauer M., D. C., S.C., 311 F.Supp. 68. The Court observed, "The modern rule * * * based on a liberal national policy favoring arbitration, seems to be that waiver or 'default' under the statute may not rest mechanically on some act such as the filing of a complaint or answer but must find a basis in prejudice to the objecting party."

Carolina Throwing Co. v. S & E Novelty Corp., 442 F.2d 329, 330–331 (4th Cir. 1971). The plaintiff has alleged no such prejudice and the Court sees none. Therefore the Court finds that CBC was not in default in making its motion to stay the proceedings and to compel arbitration.

Section 2 of the Federal Arbitration Act reads as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis added)

Section 1 of the Act defines "commerce" as:

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, . . . .

The construction of British Woods Apartments was clearly an interstate transaction involving "commerce": (1) Defendant brought in personnel from Georgia to work on the project. (2) Materials were shipped in from South Carolina (stained plywood siding) and Georgia (finish hardware, sliding glass doors and windows, roofing materials). (3) Joint sureties on the bond covering the lien filed by Warren Brothers Company were California and New York companies operating through a Texas agent. These elements amount to at least as much interstate interaction as those in Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra;* Prima Paint Corporation v. Flood & Conklin Mfg. Co., 360 F.2d 315 (2d Cir. 1966), aff'd, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345 (10th Cir. 1973); Metro In-

dustrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir. 1961), cert. denied, 368 U.S. 817, 82 S. Ct. 31, 7 L.Ed.2d 24 (1961); and Harman Electrical Construction Co. v. Consolidated Engineering Co., 347 F.Supp. 392 (D.Delaware 1972), where courts held that the Federal Arbitration Act applied because the transaction involved commerce. Therefore, the Court finds that the transaction between plaintiff Warren Brothers Company and defendant CBC involved "commerce" as required by 9 U.S.C. § 2 and that the Federal Arbitration Act is applicable to this case. Thus, it is concluded that the plaintiff and defendant have bound themselves to a valid arbitration agreement under the United States Arbitration Act and that an arbitrable dispute has arisen. Therefore, the *motion of the defendant to stay the trial of the action until arbitration has been had in accordance with the terms of the contract is granted.*

■ CBC also seeks an order compelling arbitration under 9 U.S.C. § 4 which states that:

[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement, would have jurisdiction under Title 28, in a civil action* or in admiralty *of the subject matter of a suit arising out of the controversy between the parties,* for an order directing that such arbitration proceed in the manner provided for in such agreement. . . *:* The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,* the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. (Emphasis added).

Thus, under Section 4, in order for a federal district court to compel arbitration, it first must be a court which, ex-

cept for the arbitration agreement, would have had subject matter jurisdiction of the controversy under Title 28. Such jurisdictional grounds exist in this case since there is both diversity of citizenship and more than $10,000 in controversy. 28 U.S.C. § 1332. Further, the court must find that neither (1) the making of the agreement for arbitration nor (2) the failure to comply with it is in controversy. Neither Warren Brothers Company nor CBC contest the fact that such an arbitration agreement was made. Since plaintiff does not contend that it has even attempted to comply with the agreement, the "failure to comply" element is not in issue. Therefore, the Court, being empowered under 9 U.S.C. § 4 to compel arbitration and to direct the parties to proceed to arbitration in accordance with the terms of the agreement, so orders.

A judgment will be entered accordingly.