**Jack R. HERETH, et al.**

v.

**Stevens M. JONES, et al.**

**Civ. A. No. 82–0187–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 27, 1982.

---

Alan G. Fleischer, John W. Vaughan, Jr., William R. Baldwin, III, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for plaintiffs.

John S. Smart, Richmond, Va., for defendants.

## OPINION

WARRINER, District Judge.

Having raised the question of jurisdiction *sua sponte* and now having studied the briefs, affidavits, and exhibits, the Court concludes that it lacks jurisdiction in this case upon two grounds.

### I

■ First, though plaintiff Hopewell Medical Center, Inc., is incorporated under the laws of the State of Georgia, it has absolutely no function or activity in that State. Indeed, it is alleged to be "passive" in its activities within this Commonwealth. Nevertheless, infinitesimal though the activity be, such activity as this corporation engages in, it engages in as a general partner in Hopewell Convalescent Center, a limited partnership which owns a nursing home in Hopewell, Virginia.

The question of a corporation's "principal place of business" requires a determination of relative activity. A large, active corporation, such as Ford Motor Company, may have hundreds of employees in Virginia yet its principal place of business remains in Michigan. Plaintiff Hopewell Medical Center, Inc., has no employees anywhere thus the fact that it has none in Virginia is not significant, relatively speaking. Apparently its sole raison d'etre is to be the corporate general partner in the Virginia nursing home venture. Thus such activity as exists in Virginia is greater than the non-activity

in any other State. That being so, the Court is forced to conclude that the principal place of business of plaintiff Hopewell Medical Center, Inc., is within the Commonwealth. It follows, then, that complete diversity is lacking since both defendants are citizens of Virginia.

### II

■ With respect to the second aspect of the Court's lack of jurisdiction, the Court expresses its appreciation for plaintiffs' pointing out to the Court that Hopewell Convalescent Center, the limited partnership in whose name the general partners Hereth and Hopewell Medical Center, Inc., sue, has among its limited partners persons who are citizens of Virginia. Plaintiffs, having properly disclosed this fact, argues that the non-diverse citizenship of limited partners does not destroy diversity. Plaintiffs rely primarily on *Colonial Realty Corporation v. Bache & Company*, 358 F.2d 178 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). Other cases supporting plaintiffs' position are *C. P. Robinson Construction Company v. National Corporation for Housing Partnerships*, 375 F.Supp. 446 (M.D.N.C.1974); *Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 709 (E.D.N.Y.1972); and *Weinfield v. Paine Webber Jackson & Curtis*, 191 F.Supp. 750 (D.Mass.1961).

None of these cases, however, is persuasive in light of the Fourth Circuit opinion in *R. H. Bouligny, Inc. v. United Steelworkers of America*, 336 F.2d 160 (4th Cir. 1964) as affirmed by the unanimous Supreme Court in *United Steelworkers of America, AFL–CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Though *Bouligny* dealt with diversity in a labor union context, rather than that of a limited partnership, the words and the reasoning of both the Circuit and the Supreme Court foreclose any attempt on the part of this Court to expand federal diversity jurisdiction by disregarding the citizenship of the individuals comprising any type of unincorporated association. Judge Bell for the Fourth Circuit pointed to

*Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889) as having "laid down the rule with respect to unincorporated associations." That rule, according to Judge Bell, is that "the actual citizenship of the members of an unincorporated association ... is controlling." Judge Bell asserted that the Chapman rule was reaffirmed in *Great Southern Fireproof Hotel Company v. Jones*, 177 U.S. 449, 454–55, 20 S.Ct. 690, 692–93, 44 L.Ed. 842 (1900), where the Court noted that "no voluntary association of persons" can be considered a citizen "unless it be a corporation."

While differentiations and distinctions can be made between various voluntary associations of persons, such as partnerships, limited partnerships, joint stock companies, labor unions, religious congregations, governing boards, and the like, the language of *Great Southern* as understood by Judge Bell excludes them all and excludes them all without differentiation. Unless they be a corporation they cannot be considered a fictitious citizen for purposes of diversity jurisdiction.

Judge Bell, in *Bouligny*, drove this point home with a quote from *Great Southern* as follows:

That a limited partnership association created under the Pennsylvania statute may be described as a "quasi-corporation," having some of the characteristics of a corporation, or as a "new artificial person," is not a sufficient reason for regarding it as a corporation within the jurisdictional rule heretofore adverted to. *That rule must not be extended. We are unwilling to extend it so as to embrace partnership associations.*

366 F.2d at 162, quoting *Great Southern Fireproof Hotel Co. v. Jones, supra,* 177 U.S. at 457, 20 S.Ct. at 693 (emphasis in original).

The Fourth Circuit in *Bouligny* reviewed post *Great Southern* cases where, it might be argued, the Supreme Court had blurred the bright line between corporations and all other unincorporated associations. Among these were *United Mineworkers of America v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922); *People of Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933); and *American Federation of Musicians v. Stein*, 213 F.2d 679 (6th Cir.), *cert. denied*, 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954). Having discussed these cases, and having distinguished them, the Fourth Circuit observed:

Whatever basis there once was for the belief that Russell intended to lay down new principles for the determination of the citizenship for diversity jurisdiction purposes, it was reversed by the passage of the 1958 amendment to the diversity statute.... The 1958 amendment ... did two things...: (1) For the first time, it referred specifically to corporations, providing that they shall be "deemed" citizens.... Corporations are treated as citizens because an Act of Congress directs that they be so treated. (2) For many corporations the statute now provides dual citizenship: A corporation is to be treated as a citizen of any State by which it is incorporated, and also of the State in which it maintains its principal place of business. This is, in the first place, confirmation of the fact that the fiction as to the citizenship of the stockholders has been abandoned.

336 F.2d at 164.

Judge Bell held that unincorporated associations could not be equated with corporations by judicial fiat attributing "deemed" citizenship to them. Although recognizing agitation for changes in the law respecting citizenship of unincorporated associations, Judge Bell emphasized that the proposal would have to be brought about by congressional amendment to the Judicial Code—not by judicial interpretation.

The Supreme Court, in its consideration of *Bouligny* and whether an unincorporated labor union is to be treated as a citizen for purposes of federal diversity jurisdiction, rejected several arguments critical of the distinction drawn for jurisdictional purposes between corporations, labor unions, and other unincorporated associations. The Court concluded that the resolution of such an issue was "properly a matter for legislative

consideration which cannot adequately or appropriately be dealt with by this Court ...." 382 U.S. at 147, 86 S.Ct. at 273. Whether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes, how such citizenship is to be determined, and what if any related rules ought to apply, are decisions which we believe suited to the legislative and not the judicial branch, regardless of our views as to the intrinsic merits of petitioner's argument....

382 U.S. at 153, 86 S.Ct. at 276. In so ruling, the Court specifically rejected the argument that *Russell* had breached the doctrinal wall established in *Chapman.*

*Navarro Savings Assn. v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), is the Court's most recent pronouncement on the general area. Though the Court held that the trustees of a business trust could invoke diversity jurisdiction on the basis of their own citizenship, rather than that of the trust's beneficial shareholders, the Court took pains to re-assert the strict *Great Southern* rule. The Court specifically distinguished the law applicable to trusts which governed its decision in *Navarro* from that applicable to other bodies such as corporations or unincorporated associations. In so doing, Justice Powell observed:

The early cases held that only persons could be real parties to the controversy. Artificial or "invisible" legal creatures are not citizens of any State. [citation omitted]. Although corporations suing in diversity long have been "deemed" citizens, ..., unincorporated associations remain mere collections of individuals. When the "persons composing such association" sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of the federal court. *Great Southern Fireproof Hotel Co. v. Jones,* 177 U.S. 449 [20 S.Ct. 690, 44 L.Ed. 842] (1900) (limited partnership association); *see Steelworkers v. Bouligny, Inc.,* 382 U.S. 145 [86 S.Ct. 272, 15 L.Ed.2d 217] (1965) (labor union); *Chapman v. Barney,* 129 U.S. 677 [9 S.Ct.

426, 32 L.Ed. 800] (1889) (joint stock company).

446 U.S. at 461, 100 S.Ct. at 1782.

Despite the passage of almost 100 years since *Chapman,* the Supreme Court has not specifically addressed the issue of diversity jurisdiction as it applies to a two-tiered limited partnership comprised of both general and limited partners.[1] The Courts of Appeals for the Second and Third Circuits, however, have reached opposite conclusions as to whether a court must consider the citizenship of the limited partners in such a limited partnership for purposes of diversity jurisdiction.

In *Colonial Realty Corp. v. Bache & Co., supra,* a Delaware corporation with its principal place of business in Pennsylvania, brought an action in the Southern District of New York against a limited partnership organized pursuant to New York law. One of the limited partners of the defendant was a citizen of Delaware and defendant asserted that diversity was thereby destroyed. The Court of Appeals for the Second Circuit approved the District Court's holding that diversity between plaintiff and all general partners would be sufficient for purposes of diversity jurisdiction notwithstanding identity of citizenship between plaintiff and one or more of the limited partners. 358 F.2d at 183–84. The Court of Appeals, without reviewing the Supreme Court precedent, reasoned that the citizenship of a limited partner need not be considered for jurisdictional purposes because under New York law he lacked the capacity to sue or be sued on behalf of the partnership except where the object of the suit was to enforce a limited partner's right against or liability to the partnership. "[A] suit brought against a New York partnership must thus be considered to be against the general partners only and identity of citizenship between a limited partner and the plaintiff does not destroy diversity." 358 F.2d at 184.

When the Court of Appeals for the Third Circuit addressed the same issue in *Carlsberg Resources Corp. v. Cambria Savings & Loan Assoc.,* 554 F.2d 1254 (3d Cir. 1977), it

---

1. The limited partnership in *Great Southern* does not appear to be the modern variety.

declined to follow the *Colonial Realty* holding. In *Carlsberg*, as in the instant case, the District Court raised the issue of diversity *sua sponte* and then dismissed the complaint for want of jurisdiction. On appeal, Judge Adams emphasized the importance of a federal court's early determination of its jurisdiction and that it should be demanding in evaluating whether diversity jurisdiction exists.[2]

Judge Adams determined that resolution of the jurisdictional issue turned upon the interplay between two tenets regarding such jurisdiction. Adams first noted the rule delineated in *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), commanding that all parties on one side of a litigation must be of different citizenship from all of those on the other. Second, Adams noted the treatment of partnerships and other unincorporated associations, at least for purposes of diversity jurisdiction, reflected in an extended line of cases wherein

> the Supreme Court has consistently held that, where noncorporate entities—including partnerships—are concerned, the courts should look to the citizenship of the persons comprising such organizations in order to determine whether there is compliance with the diversity standard. In effect, an unincorporated association has been viewed as a citizen of each state in which it has a member.

554 F.2d at 1258, citing *United Steelworkers of America v. R. H. Bouligny, Inc.,* supra; *Thomas v. Board of Trustees*, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160 (1904); *Great Southern Fireproof Hotel Co. v. Jones, supra; Chapman v. Barney, supra.*

In a discussion of *Great Southern Fireproof Hotel Co. v. Jones*, supra, Judge Adams noted the possible distinction between that case and the instant matter in that the Supreme Court did not have to confront the factual matrix of different classes of partners. Nonetheless, Adams suggested that the broad rule of *Southern Fireproof* might well apply in such a situation. Adams next looked to *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889), which involved a joint stock company's action in the federal courts. Under the laws of New York, an unincorporated association was authorized to bring suit in the name of its president. Although the joint stock company claimed to be a citizen of New York, as was its president, the Court refused to rule that diversity existed absent an indication that the citizenship of the other association members was diverse from the Illinois defendant. Adams observed that,

> [i]mplicit in the opinion in *Chapman* may be a refusal by the Supreme Court to differentiate between classes of association or partnership members regarding questions of diversity. In that case, there were in essence, two such classes—one consisting of the president, a member with capacity to sue by virtue of state law, and another comprised of all other partners in the enterprise. Despite such class distinctions as well as an apparent difference in the capacity of each class to sue, the *Chapman* Court suggested that the citizenship of all association members still must be considered in order to resolve the jurisdictional question. It would appear that such consideration also is mandatory in the litigation now before us, where there are two classes of part-

---

2. As Judge Adams explained:

The theoretical underpinnings of the precept that a prime duty of the federal courts is to address any jurisdictional issues are not difficult to perceive. Without the resolution of such questions, federal judges may conduct protracted litigations which are not properly before them and which ultimately may be dismissed summarily by a reviewing tribunal for lack of the requisite jurisdictional predicate. Not only may an improper exercise of judicial authority by the federal courts, in contravention of constitutional and statutory dictates, disrupt the carefully craft-ed and balanced system of federalism designed by the framers of the Constitution, but unnecessary proceedings would certainly require the expenditure of valuable judicial resources as well. Given these considerations, it is not surprising that jurisdictional issues should be dealt with as promptly and as carefully as possible.

In our view, the concerns of judicial economy and of due respect for the principles of federalism are most apposite where, as here, matters of diversity jurisdiction are implicated.

554 F.2d at 1256.

ners—a single general partner and a large class of limited members.

554 F.2d at 1259.

From these two precepts and reading the Supreme Court's decision in *Bouligny* as prescribing strict adherence to the principles respecting diversity jurisdiction, Adams summarized that,

> [w]hen a rule of complete diversity is read in conjunction with the principle that the citizenship of a partnership depends upon that of its members, it becomes clear that diversity jurisdiction may not obtain here, unless all of the members of the plaintiff partnership are of distinct citizenship from all of the defendants. Since such diversity in citizenship is lacking, the district court properly dismissed the complaint for want of jurisdiction.
>
> In so stating, we recognize that the three leading Supreme Court cases in this area, which have been discussed above, do not squarely address the exact question posed here—in effect, whether partners of divergent status may be treated differently for purposes of an evaluation regarding diversity of citizenship. Yet Chapman does appear to have indicated, albeit only implicitly, that considerations of varying membership status should not bear on the fundamental inquiry whether diversity exists. More importantly, when heed is paid to the postulate of diversity analysis presented in Part II—that access to the federal courts on the ground of diversity should be denied absent a clear entitlement to such access—it becomes clear that this Court should conclude that diversity is lacking here. To do otherwise would constitute an extension of such jurisdiction to hitherto uncovered broad categories of litigants, with the resultant detriment to judicial economy and our system of federalism.

554 F.2d at 1254.

Judge Adams next turned to the *Colonial Realty* decision which plaintiffs argued as

being an exception to the traditional jurisdictional treatment of unincorporated associations. Recognizing the basis for the decision as being the Second Circuit's view that a limited partner should not be counted for diversity purposes if he lacks capacity to sue or be sued on behalf of the partnership, the Third Circuit declined "to accede to the teachings of *Colonial Realty,* or to apply them" to the matter before it. The Court's reasons were several. First, it was concerned by *Colonial Realty*'s engrafting of capacity-to-sue rules to the traditional requirements of diversity jurisdiction. Adams reasoned that jurisdictional issues must be considered and resolved before reaching a capacity-to-sue issue noting that "[i]t may be for this reason that the Supreme Court has, in the leading cases concerning partnerships and other nonincorporated associations, declined to view problems involving diversity jurisdiction through the perspective of capacity to sue." 554 F.2d at 1260.

Judge Adams hypothesized that the Second Circuit had relied on Rule 17(b) of the Federal Rules of Civil Procedure which provides that the capacity to sue or be sued is to be determined by the law of the State in which the District Court sits. The New York statute pertinent in *Colonial Realty* provided that limited partners had no capacity to sue and thus the *Colonial Realty* court concluded that such partners should not be considered for purposes of adjudicating diversity.[3] The Third Circuit reasoned, however, that such use of Rule 17 would run afoul of Rule 82's mandate proscribing use of the Rules of Civil Procedure to extend or limit the jurisdiction of the United States District Courts. The court reasoned that to import State law concepts of capacity to sue to jurisdictional considerations would have an effect on jurisdiction. The court added that even if Rule 17 were not

---

**3.** The relevant Virginia statute is for practical purposes identical to the New York statute in *Colonial Realty.* It provides: "A contributor [i.e., limited partner], unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership." Va. Code § 50–69 (Repl.Vol.1980).

the basis of the Second Circuit's opinion it would nonetheless be improper to allow diversity jurisdiction to be made subject to the "vagaries of State law." "Availability of diversity jurisdiction ... ordinarily should not rest upon considerations of state law but rather upon uniform and readily cognizable principles of general application." 554 F.2d at 1261.

Second, the court was unable to discern a directive from the Supreme Court that the citizenship of limited partners should be ignored for diversity purposes. To the contrary, it had interpreted the Supreme Court's rulings on analogous associations as indicating an opposite course. Absent instructions from the Court, the Third Circuit was "most reluctant to carve out an exception to the complete diversity standard and the traditional treatment of partnerships with respect to diversity jurisdiction." 554 F.2d at 1261–62.

Finally, the court was unable to find support for the *Colonial Realty* ruling either in the diversity jurisdiction statute, 28 U.S.C. § 1332, or from other policy considerations. Accordingly, the court concluded that the District Court in its case had properly dismissed the complaint for lack of diversity jurisdiction.

Following the Supreme Court's decision in *Navarro*, the Third Circuit again addressed the issue of diversity jurisdiction as applied to limited partnerships in *Trent Realty Associates v. First Fed. Sav. & Loan Ass'n*, 657 F.2d 29 (3d Cir. 1981). In *Trent Realty*, the Third Circuit rejected the argument that *Navarro* required application of a "real party in interest" test to determine a limited partnership's citizenship. Instead, the court adhered to its prior ruling in *Carlsberg Resources*.

The Fourth Circuit has not addressed the issue before this Court. However, in *C. P. Robinson Const. Co. v. National Corp. for Housing Partnerships, supra,* Judge Ward of the Middle District of North Carolina briefly addressed the issue and in dictum cited Colonial Realty as authority for the premise that identity of citizenship between a limited partner and a third party involved in litigation with a limited partnership would not be fatal to federal diversity jurisdiction. 375 F.Supp. at 449. Although the Court gives great deference to Judge Ward's opinion, it notes that Judge Ward did not have the present issue before him, did not have the benefit of the *Carlsberg Resources* decision, and did not otherwise address the relevant precedent of the Supreme Court.

This Court, having considered the pertinent authority and believing that any modification to the diversity jurisdiction statute must come through congressional action—not judicial interpretation—and noting that there is identity of citizenship between some of the limited partners of Hopewell Convalescence Center and defendants Jones and Strange-Boston, holds that there is lacking in this suit the complete diversity mandated by *Strawbridge v. Curtiss, supra.*

Accordingly, this action is DISMISSED for lack of jurisdiction. An appropriate order shall issue.