**BONAR, INC.**

v.

**Stanley A. SCHOTTLAND.**

**ABPI–DELAWARE, INC., a Delaware Corporation**

v.

**Stanley A. SCHOTTLAND, Steven B. Schottland, and Peter Schottland.**

**Stanley A. SCHOTTLAND, Steven B. Schottland, Peter B. Schottland, and Charles B. Schottland, on their own behalves and derivatively on behalf of American Packaging Corporation**

v.

**LOW & BONAR, PLC., Bonar, Inc., and ABPI–Delaware, Inc.**

**Civ. A. Nos. 85–4806, 85–4642 and 85–4843.**

United States District Court, E.D. Pennsylvania.

March 14, 1986.

Philip Lebowitz, James J. Ferrelli, Philadelphia, Pa., for Bonar, Inc. and Low & Bonar.

Patrick Ryan, Philadelphia, Pa., for all of the Schottlands.

Howard Kohn, Joseph Kohn, Philadelphia, Pa., for ABPI–Delaware, Inc.

## MEMORANDUM OPINION

BECHTLE, District Judge.

On February 5, 1986, this court, following full briefing and hearing, dismissed the above three consolidated actions for lack of subject matter jurisdiction. Jurisdiction in all three cases was premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The following represents the court's reasoning for so ordering.

In the lead case (C.A. No. 85–4843), plaintiffs, Stanley A. Schottland, Steven B. Schottland, Peter B. Schottland and Charles B. Schottland ("the Schottlands"), ask the court to declare that plaintiffs have an enforceable agreement to purchase the stock of American Packaging Corporation ("APC") owned by defendant ABPI–Delaware, Inc. ("ABPI–Del."), by way of a leveraged buy-out ("Schottland/ABPI–Del. Agreement"). Plaintiffs further seek to enjoin defendants Low & Bonar ("L & B"), a Scottish corporation, and Bonar, Inc. ("Bonar"), a Canadian corporation, from exercising their alleged option to purchase the same shares of APC stock owned by ABPI–Del. ("Bonar Option"). Stanley, Peter and Steven Schottland are citizens of Pennsylvania. Charles Schottland is a citizen of the State of New York. ABPI–Del. is a Delaware corporation whose alleged principal place of business is Wilmington, Delaware.

Much of the jurisdictional entanglement in this case stems from the corporate structure set-up to hold and control the various ownership interests in APC. APC is a closely-held Pennsylvania corporation involved primarily in the manufacturing of packaging materials, having its principal place of business in Philadelphia, Pennsylvania. The company has 5,000 shares of common stock issued and outstanding, 79.5 percent of which is owned by defendant ABPI–Del. and 20.5 percent of which is owned by the Schottlands. APC's shares are not publicly traded. The sole purpose of ABPI–Del.'s existence is to hold the 79.5 percent ownership interest in APC. ABPI–Del., in turn, is wholly-owned by American Bag & Paper Industries, Inc. ("ABPI–Pa."), a closely-held Pennsylvania corporation whose principal place of business is in Pennsylvania. The sole purpose of ABPI–Pa.'s existence is to hold and control a 100 percent ownership interest in ABPI–Del. The majority and controlling shareholder of ABPI–Pa. is Emanuel S. Kardon ("Kardon"). As shown below, David Kittner ("Kittner") and Paul K. Zimmerman ("Zimmerman") are also substantial shareholders. Kardon and Kittner are citizens of Pennsylvania, while Zimmerman is a citizen of California.[1] The following diagram illustrates the ownership hierarchy:

---

1. There is no evidence of the citizenship of Ms. Palley. Her citizenship, however, is of no consequence to the legal issues before the court.

At the conclusion of trial solely on the issue of the existence and enforceability of the Schottland/ABPI–Del. Agreement, it became apparent to the court, despite pleading by the parties to the contrary, that complete diversity might be lacking. Accordingly, the court *sua sponte* raised the issue of subject matter jurisdiction. After reviewing the applicable case law and the parties' briefs on the issue,[2] the court finds that in all three actions complete diversity is lacking.

I.

 It has long been settled that diversity of citizenship between plaintiffs and defendants must be complete to confer jurisdiction under 28 U.S.C. § 1332. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A corporation is deemed a citizen not only of its state of incorporation, but also of the state where it has its principal place of business.

28 U.S.C. § 1332(c). This dual citizenship requirement was intended to *restrict* the availability of diversity jurisdiction in cases involving corporations, *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir.1985); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 558 (5th Cir.1985), by denying federal court access to "essentially local corporations which were incorporated in outside states." *Hanna Mining Co. v. Minnesota Power & Light Co.*, 573 F.Supp. 1395, 1400 (D.Minn.1983), *aff'd*, 739 F.2d 1368 (8th Cir.1984).

In the present case, ABPI–Del. is unquestionably a citizen of Delaware, the state in which it was incorporated. ABPI–Del.'s second possible state of citizenship, being where its principal place of business is located, requires a more in-depth analysis.

A. *Principal Place of Business.*

 A corporation's principal place of business exists where the center of corpo-

2. In their briefs ABPI–Del. and Bonar argue that complete diversity is present, while the Schottlands, for the first time, take the position that all three actions, including their own, must be dismissed for lack of subject matter jurisdiction.

rate activities exist or where the "center of gravity of the corporate function" exists, rather than where occasional meetings of directors take place. *Holman v. Carpenter Technology Corp.*, 484 F.Supp. 406, 410 (E.D.Pa.1980) (*quoting Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 864 (S.D.N.Y.1959)).

ABPI–Del., in support of jurisdiction being in this court, contends that its principal place of business is Delaware. In support of this contention ABPI–Del. offers the following factors: 1) All the parties in their respective complaints allege that ABPI–Del. has its principal place of business in Delaware; 2) ABPI–Del. corporate documents list 1600 Pennsylvania Ave., Wilmington, Delaware as the corporation's principal place of business; 3) Some meetings of the board of directors and shareholders of ABPI–Del. took place at the corporation's 1600 Pennsylvania Ave. address; 4) ABPI–Del. maintains a "Cash Management Account" with Merrill, Lynch, Pierce, Fenner & Smith, Inc. at Merrill Lynch's office in Wilmington, Delaware; 5) ABPI–Del. maintains a checking account with Mellon Bank (Delaware); and 6) ABPI–Del. pays corporate taxes only in Delaware.

■ That the parties allege in their complaints that ABPI–Del.'s principal place of business is Delaware is of no consequence to the court's jurisdictional determination. Subject matter jurisdiction is a question of judicial power; it is not a question of preference or selection, or a question of whether the parties agree as to the court's jurisdiction. Subject matter jurisdiction cannot be agreed to or waived by the parties. *Bialac v. Harsh Building Co.*, 463 F.2d 1185, 1186 (9th Cir.1972). Once the court determines that it does not have power to decide a case, irrespective of the parties' allegations in the pleadings, anything that has been previously decided in the case is a nullity and absolutely meaningless and the case must immediately be dismissed. Neither the parties nor the court may confer subject matter jurisdiction on the court by agreement, consent, waiver, estoppel or desire. Lack of subject matter jurisdiction in the court is lack of power in the court, and nothing short of facts that supply what the law prescribes as supporting jurisdiction can restore that power. The facts here fall below that level.

■ As to the 1600 Pennsylvania Ave., Wilmington, Delaware address referenced in certain corporate documents, the evidence clearly suggests that this is not the office of ABPI–Del., but, in fact, is the office of Landsburg, Platt, Greenwald, Flax & Nieto, an independent accounting firm. While it is true some ABPI–Del. corporate activity takes place at this address, such as some meetings of the board of directors, the office is not the exclusive office of ABPI–Del. ABPI–Del. owns no property nor has any permanent or part-time employees in this office. In reality, 1600 Pennsylvania Ave. is an accounting firm's office manned by accountants and their employees which ABPI–Del. apparently has permission to use simply as a business mailing address. While the use of this address undoubtedly serves the legitimate ABPI–Del. business purposes of being the place where mail is received, it is not ABPI–Del.'s principal place of business.

Evidence has been offered that ABPI–Del. has a "Cash Management Account" and a checking account in Delaware. There is no evidence, however, as to any activity in either account which suggests that the corporation's principal place of business is Delaware. It is true that ABPI–Del. pays corporate taxes in Delaware, but such payment comes about, presumably, through the tax laws having to do with it being created and existing under Delaware law and not because Delaware is ABPI–Del.'s principal place of business. Finally, while the evidence suggests that some sporadic meetings of the board of directors and shareholders were held in Delaware, there is simply no evidence before the court to allow it to conclude that the corporation's "center of gravity" is in Delaware. The corporation has no offices,

executive or professional staff, or employees of any kind in Delaware. None of its officers, directors or shareholders reside in or are citizens of Delaware. In short, the corporation conducts no, or virtually no business in Delaware.

■ On the other side of the corporate fulcrum, the following factors support the notion that ABPI–Del.'s principal place of business is indeed in Pennsylvania: 1) ABPI–Del.'s corporate counsel, David Kittner, Esq., is a partner in the Philadelphia law firm Blank, Rome, Comisky & McCauley and is a citizen and resident of Pennsylvania; 2) All the officers of ABPI–Del. are citizens and residents of Pennsylvania;[3] 3) Most of the members of ABPI–Del.'s board of directors are Pennsylvania citizens, the other members being citizens of states other than Delaware;[4] 4) Critical correspondence between defendant Bonar and ABPI–Del. concerning Bonar's desire to purchase the APC stock held by ABPI–Del., the very stock at issue in this litigation, was sent to ABPI–Del. in care of David Kittner at his Philadelphia, Pennsylvania law office address; 5) Negotiations between ABPI–Del. and both the Schottlands and Bonar for the sale of the APC stock owned by ABPI–Del. took place primarily in Pennsylvania, never in Delaware; and 6) ABPI–Del. is wholly-owned by ABPI–Pa., a Pennsylvania corporation whose principal place of business is in Pennsylvania. Most importantly, however, is the fact that the sole business purpose and activity of ABPI–Del. is the holding of stock in a Pennsylvania corporation. In other words, ABPI–Del.'s "business," and its *only* business, is the part ownership of APC, a Pennsylvania corporation with its principal place of business in Pennsylvania.

In *Hereth v. Jones,* 544 F.Supp. 111 (E.D. Va.1982), plaintiff was a Georgia corporation whose sole business activity was that of being a general partner in a limited partnership which owned a nursing home in Virginia. In concluding that the corporation's principal place of business was in Virginia, where the nursing home was located, and not in Georgia, the court stated:

[T]hough plaintiff ... is incorporated under the laws of the State of Georgia, it has absolutely no function or activity in that State. Indeed, it is alleged to be "passive" in its activities in [Virginia]. Nevertheless, infinitesimal though the activity be, such activity as this corporation engages in, it engages in as a general partner in ... a limited partnership which owns a nursing home in Hopewell, Virginia.

The question of a corporation's "principal place of business" requires a determination of relative activity.... *Apparently its sole raison d'etre is to be the corporate general partner in the Virginia nursing home venture. Thus such activity as exists in Virginia is greater than the non-activity in any other State.* That being so, the Court is forced to conclude that the principal place of business of plaintiff Hopewell Medical Center, Inc., is within the Commonwealth. It follows, then, that complete diversity is lacking since both defendants are citizens of Virginia. (Emphasis added).

*Id.* at 112. Similarly, in *Bialac v. Harsh Building Co.,* 463 F.2d 1185, 1186 (9th Cir.1972), the court held that notwithstanding the parties' stipulation that the defendant corporation's principal place of business was in Oregon, where the only business activity of the corporation was the owning and operating of a Phoenix, Arizona apartment complex, even if the policy and administrative decisions may have been made elsewhere, the corporation's principal place of business was Arizona.

In the present case, while ABPI–Del.'s activities in Pennsylvania might be con-

---

**3.** Kardon is president and treasurer of ABPI–Del. Kittner is vice-president and secretary of the corporation. Both are citizens of Pennsylvania.

**4.** The members of the board are Kardon, Kittner, Zimmerman and J. Palley. Kardon and Kittner are Pennsylvania citizens. Zimmerman is a citizen of California. There is no evidence as to the citizenship of Palley.

sidered "passive," its "sole reason d'etre" is to be passive and hold an ownership interest in a Pennsylvania corporation (APC). "Infinitesimal though its activity be ... the activity as exists in [Pennsylvania] is greater than the [activity] in any other state." *See Hereth v. Jones, supra.* While some policy and administrative decisions may be performed in Delaware, which is itself doubtful, the activity which occurs in Pennsylvania is far more significant for purposes of determining ABPI–Del.'s principal place of business. *See Bialac v. Harsh Building Co., supra; Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir.1980). The "center of gravity" of everything ABPI–Del. does is in Pennsylvania.

In *Hanna Mining Co. v. Minnesota Power & Light Co.,* 573 F.Supp. 1395 (D.Minn.1983), *aff'd,* 739 F.2d 1368 (8th Cir. 1984), a case remarkably similar to the present case, Hanna Mining Co., a Delaware corporation, brought suit based on diversity jurisdiction against Minnesota Power & Light Co., a Minnesota corporation whose principal place of business was in Minnesota. The dispute concerned a Minnesota mining project known as the Butler Taconite Project in which Hanna Mining Co. was the managing agent. Butler Taconite was a joint venture or partnership between Inland Steel Mining Co. (38% ownership) and Istasca Pellet Co. (62% ownership), both Delaware corporations. Inland Steel Mining Co., in turn, was a wholly-owned subsidiary of Inland Steel Company, also a Delaware corporation. Inland Steel Mining Co.'s sole business purpose was to hold the parent corporation, Inland Steel Co.'s interest in Butler Taconite. After joining Inland Steel Mining Co. and Istasca Pellet Co. (the joint venturers in the mining project) as indispensable parties pursuant to Fed.R.Civ.Pro. 19, the

court endeavored to determine the citizenship of Inland Steel Mining Co. for purposes of diversity jurisdiction. The court held:

Inland Steel Mining, which owns 38 per cent of Butler Taconite, was incorporated in Delaware. But for the purposes of diversity jurisdiction, a corporation is deemed to be a citizen not only in its state of incorporation but also in the state where it has its principal place of business. 28 U.S.C. § 1332(c).... Inland Steel Mining was created to hold and operate Inland Steel Company's interest in Butler Taconite, and it has no business other than this venture. Therefore, *Inland Steel Mining's principal place of business is clearly in Minnesota, not in the state in which its executive and administrative offices may be located, and the corporation is a citizen of Minnesota for diversity purposes. Bialac v. Harsh Building Co.,* 463 F.2d 1185 (9th Cir.1972); *Mattson v. Cuyuna Ore Co.,* 180 F.Supp. 743 (Minn.1960). Since Minnesota Power is also a Minnesota corporation, there is no complete diversity and federal jurisdiction is destroyed. (Citations omitted). (Emphasis added).

573 F.Supp. at 1399–1400.

Similarly, in the present case:

[ABPI–Del.], which owns [79.5] percent of [APC], was incorporated in Delaware.... [ABPI–Del.] was created to hold and operate [ABPI–Pa.'s] interest in [APC], and it has no business other than this venture. Therefore, [ABPI–Del.'s] principal place of business is clearly [Pennsylvania], not the state in which its executive and administrative offices may be located, and the corporation is a citizen of [Pennsylvania] for diversity purposes.[5]

---

**5.** The court has been referred to a series of cases cited by ABPI–Del. that suggest that in some circumstances the principal place of business of the corporation is the corporation's state of incorporation. A review of those cases, though, suggests that they apply to corporations that have either been incorporated but have not yet started up, or corporations that have wound

down and have little or no activity. *See, e.g., Gavin v. Read Corp.,* 356 F.Supp. 483 (E.D.Pa. 1973); *Timber Ridge Homeowners Assn. v. Allstate Dev. Corp.,* 472 F.Supp. 86 (E.D.Wis.1979). These cases are not applicable to the present situation. ABPI–Del., as passive as it is, is a viable ongoing corporate enterprise as a holder of stock in an active corporation. *See Bialac v.*

## B. *Parent/Subsidiary Alter-ego.*

 Parent/subsidiary cases adopting a corporate alter-ego analysis further support the court's conclusion that ABPI–Del.'s principal place of business is Pennsylvania. While the general rule is to give jurisdictional effect to separate corporate entities, *see Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir.1972), in determining the principal place of business of a subsidiary, the subsidiary's relationship to the parent corporation is a factor which the court must consider. Where the corporate separation between the parent and subsidiary is "real" and carefully maintained and the subsidiary has a clearly discernible principal place of business which is different from that of the parent's, the subsidiary's separate place of business is recognized. *Id.* at 1142. Where, however, the corporate separation is "fictitious" or where the subsidiary's business is not distinguishable from the business of the parent and they are acting as one or are in fact one corporate entity, the parent's place of business is recognized as the principal place of business of the subsidiary. *See, e.g., Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557 (5th Cir.1985); *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354–55 (5th Cir. 1985); *United States v. Reserve Mining Co.*, 380 F.Supp. 11, 27 (D.Minn.1974), *aff'd, Reserve Mining Co. v. EPA*, 514 F.2d 492 (8th Cir.1975). *See generally Fritz v. American Home Shield Corp.*, 751 F.2d 1152, 1153 (11th Cir.1985); *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 315–16 (5th Cir.1980); *Frazier, III v. Alabama Motor Club, Inc.*, 349 F.2d 456, 460 (5th Cir.1965).

 The business of ABPI–Del. and ABPI–Pa. are, in essence, identical. That is, both the parent and subsidiary were created with the ultimate purpose of holding stock certificates of certain APC shareholders—namely Messrs. Kardon, Kittner and Zimmerman. These individuals, and in particular Mr. Kardon, as officers in ABPI–

*Harsh Building Co., supra; Hereth v. Jones, supra.*

Pa. make all the business decisions and completely dominate ABPI–Del. To conclude that Delaware is ABPI–Del.'s principal place of business would require ignoring the reality of the underlying dispute before the court. The sole issue is who, if anybody, purchased the APC stock owned, on paper, by ABPI–Del., but in reality owned by ABPI–Pa., a closely-held Pennsylvania corporation. The Pennsylvania corporation simply passed its APC stock certificates, through a corporate mechanism, into a Delaware holding company. Notwithstanding this shifting of the location of the stock certificates, the Pennsylvania corporation remains the controlling owner of the APC stock. The appearance of corporate autonomy of ABPI–Del. is clearly superficial and though concededly lawful for some purposes, it is not corporate autonomy that provides subject matter jurisdiction dimension. From this viewpoint ABPI–Del. is merely a corporate fiction. In this circumstance the court cannot elevate form over substance. Adopting the words of the United States Court of Appeals for the Fifth Circuit:

> A contrary conclusion can be reached only by blind adherence to form and equally blind disregard of the facts. The reality of the situation here presented is that plaintiffs who are likely [Pennsylvanians] have taken advantage of corporate formalities [the creation of ABPI–Del.] without corresponding substance to maintain in federal court an action against a [Pennsylvania] corporation [ABPI–Pa.] for conduct occurring wholly in [Pennsylvania]. Federal diversity was never meant to encompass such actions; "it was never intended to extend to local corporations which, because of a legal fiction, are considered citizens of another state."

*Freeman, supra,* 754 F.2d at 558 (*citing* S.Rep. No. 1830, 85th Cong., 2d Sess., reprinted in 1958 U.S.Code Cong. & Ad. News 3099, 3102). Consequently, for purposes of diversity, under a parent/subsidiary alter-ego analysis, ABPI–Del. assumes

the principal place of business of ABPI–Pa., Pennsylvania, thus destroying diversity.

C. *Joinder.*

■ The actions in which both ABPI–Del. and the Schottlands are parties should be dismissed for lack of jurisdiction on a third ground. ABPI–Pa. should be joined as an indispensable party pursuant to Fed. R.Civ.Pro. 19. Where a parent and subsidiary have identical interests, joinder of the parent as an indispensable party is warranted. *See Freeman, supra,* 754 F.2d at 589; *Reserve Mining Co. v. EPA,* 514 F.2d 492, 534 (8th Cir.1975); *Hanna Mining Co. v. Minnesota Power & Light Co., supra,* 573 F.Supp. at 1398–1400.

In *Reserve Mining, supra,* the district court, pursuant to Fed.R.Civ.Pro. 19(a)(1), joined the parent corporations of the named defendant subsidiaries. In affirming the district court's holding, the United States Court of Appeals for the Eighth Circuit stated:

> We believe the evidence amply demonstrates that Armco and Republic, *as the sole stockholders of Reserve, have interests substantially identical with those of Reserve and that the district court did not abuse its discretion under Rule 19(a)* in ruling "that complete relief [could] not be accorded plaintiffs" unless Armco and Republic were joined. 380 F.Supp. at 27. Moreover, Armco and Republic show no prejudice from this late joinder. We affirm on this appeal. (Emphasis added).

514 F.2d at 534.

■ In the present case, ABPI–Pa., as the sole shareholder in ABPI–Del., has an identical interest in the outcome of the litigation as that of ABPI–Del. That is to say, since substantially all of ABPI–Del.'s corporate assets, the APC stock, is the disputed property for sale in the underlying litigation, and since ABPI–Pa.'s sole asset is the ownership of ABPI–Del., the

sale of the APC stock to either Bonar or the Schottlands or to no one will have an identical effect on both ABPI–Pa. and ABPI–Del. Consequently, ABPI–Pa. must be joined as a party in both cases in which ABPI–Del. is a party. Since both ABPI–Pa. and most of the Schottlands are citizens of Pennsylvania, diversity jurisdiction is destroyed.

Therefore in C.A. No. 85–4843 and C.A. No. 85–4642, under a principal place of business or parent/subsidiary alter-ego or joinder analysis, there are Pennsylvania citizens on both sides of the controversy, and federal jurisdiction is lacking.

## II.

The court must now decide whether it has jurisdiction to render a decision in *Bonar, Inc. v. Stanley A. Schottland,* (C.A. No. 85–4806).[6] Neither ABPI–Del. nor Steven, Peter or Charles Schottland are parties to this action. Bonar is a citizen of Canada and Stanley Schottland is a citizen of Pennsylvania. Thus, on the face of the complaint there would appear to be diversity of citizenship between plaintiff and defendant. Since the threshold issue to be decided in the Bonar action is the validity and enforceability of the Schottland/ABPI–Del. Agreement, however, the court must determine whether under Fed.R.Civ.Pro. 19 ABPI–Del. must be joined as a party. If joinder is required, diversity jurisdiction must be re-examined because there is already a Pennsylvania citizen named as a defendant.

Under section (a) of Rule 19, the court must first decide whether ABPI–Del. should be joined. If so, since ABPI–Del.'s joinder would divest the court of jurisdiction, under Rule 19(b) the court must then decide whether the case should proceed without ABPI–Del. *Provident Bank v. Patterson,* 390 U.S. 102, 107–09, 88 S.Ct. 733, 736–38, 19 L.Ed.2d 936 (1968); *Republic Realty Mortgage Corp. v. Eagson*

---

**6.** This is a suit for relief based on Stanley Schottland's alleged tortious interference with Bonar's claim of an option to buy the very same APC stock owned by ABPI–Del. that Schottland is claiming entitlement to in his own suit.

*Corp.,* 68 F.R.D. 218, 220 (E.D.Pa.1975) (Bechtle, J.).

Rule 19(a) defines those persons who should be joined as parties to the action: (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

ABPI–Del. should be joined as a party. ABPI–Del.'s interest in the subject matter of the Bonar action is clear. Bonar is asking the court to decide the enforceability of the alleged Schottland/ABPI–Del. Agreement for the purchase of the APC stock owned by *ABPI–Del.* In effect, Bonar is asking the court to adjudicate rights concerning a contract to which ABPI–Del., not Bonar, is a party. In fact, only one of five parties to the contract, Stanley Schottland, would be before the court in this civil action. Thus, under Rule 19(a) ABPI–Del. clearly "claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede his ability to protect that interest." Fed.R.Civ.Pro. 19(a)(2)(i). Furthermore, Stanley Schottland will be subject to a substantial risk of having to retry the same issue in state court in an action brought either by himself against ABPI–Del. or by ABPI–Del. against him. Thus, "persons already parties [may be] subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest." Fed.R.Civ.Pro. 19(a)(2)(ii).

Even though joinder is required, the next question is whether ABPI–Del. will voluntarily join with Bonar as a plaintiff. If the answer is yes, then diversity will be destroyed. If ABPI–Del. refuses to join voluntarily, then in the "proper case" the court can require it to join as an involuntary plaintiff. This court has previously held that a "proper case" is only where the party sought to be made a plaintiff cannot be served with process. *Dublin Water Co. v. Delaware River Basin Comm.,* 443 F.Supp. 310, 315 (E.D.Pa.1977) (Bechtle, J.). Since ABPI–Del. can be served with process it cannot be joined as an involuntary plaintiff. Rule 19(a), however, allows the court to join ABPI–Del. as a defendant. That would result in Bonar as plaintiff suing both ABPI–Del. and Stanley Schottland as co-defendants. These parties, however, have no common ground as co-defendants in the claim brought by Bonar against Schottland. Indeed, ABPI–Del. and Schottland have interests that are opposite to each other as C.A. No. 85–4642 attests. Furthermore, these same antagonistic interests of ABPI–Del. are identical to the antagonistic interests Bonar has against Schottland. That is, both Bonar and ABPI–Del. claim that there is no agreement between ABPI–Del. and Schottland for the sale of ABPI–Del.'s APC stock. Schottland disagrees. Joinder of ABPI–Del. as a defendant therefore pits Bonar and ABPI–Del. against each other even though their interests are identical and it puts ABPI–Del. and Schottland together, even though their interests are opposite. Well settled precedent requires the court to realign the parties, for purposes of determining diversity, according to their real interests. *Indianapolis v. Chase National Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); *Lewis v. Odell,* 503 F.2d 445, 447

(2d Cir.1974); *Rose Hall, Ltd. v, Chase Manhattan Overseas Bank*, 494 F.Supp. 1139, 1150 (D.Del.1980). ABPI–Del.'s real interest in the Bonar action is as a plaintiff with Bonar. Since ABPI–Del.'s joinder as a realigned plaintiff would oust the court of jurisdiction, pursuant to Fed.R.Civ.Pro. 19(b) the court must next decide whether in "equity and good conscience the action should proceed" without the joinder of ABPI–Del.

Rule 19(b) provides:

(b) *Determination by Court Whenever Joinder not Feasible.* If a person is described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

 If ABPI–Del. is not made a party, Stanley Schottland could well be collaterally estopped by a decision against him in the Bonar action, yet ABPI–Del. would not be bound by a decision in favor of Stanley Schottland.[7] Similarly, the Schottlands other than Stanley Schottland would not be bound by a decision against Stanley Schottland. It is precisely this kind of inconsistent effect that dismissal under Rule 19(b) was designed to avoid.

Another factor to be considered is whether a judgment rendered in the person's absence will be adequate. As pointed out in Wright & Miller, "[t]his consideration promotes judicial economy by avoiding going forward with actions in which the Court may end up rendering hollow or incomplete relief because of the inability to bind persons who could not be joined." Wright & Miller, *Federal Practice & Procedure* § 1608 (1972). For the reasons outlined above, whichever party prevails if judgment is rendered in the Bonar case may find itself victorious but empty-handed, except for process served in new and other cases filed by absent parties to the same dispute.

Finally, if the Bonar action is dismissed, plaintiff could still seek relief in state court. In fact, any party will be able to bring an action in state court, with all parties present and subject to that court's jurisdiction, where all of the issues to be decided are grounded in state law which is what this court is required to do in any event. The risk of duplicative or inconsistent litigation will thus be eliminated. *See, e.g., Fitzgerald v. Haynes*, 241 F.2d 417, 420 (3d Cir.1957) ("[i]f the joining of these principal parties in interest should reveal that the controversy is essentially a local one among Pennsylvanians, and thus not a diversity case, the result would be no more than the relegation of the suit to the forum in which it belonged from the beginning."); *Hill v. Carman*, 61 F.R.D. 583 (D.Del. 1974), *aff'd*, 517 F.2d 1398 (3d Cir.1975).

ABPI–Del. is clearly an indispensable party who must be joined and aligned as a plaintiff. Because ABPI–Del. is a citizen of Pennsylvania for purposes of diversity, complete diversity is lacking because of Schottland's citizenship and the Bonar action must also be dismissed.

## CONCLUSION

ABPI–Del. is a citizen of both Delaware and Pennsylvania for purposes of diversity.

---

**7.** Bonar dismisses the consideration that ABPI–Del. could challenge an adverse result against Bonar with the assertion that ABPI–Del.'s counsel has "indicated" a willingness to stipulate to be bound by the result in the Bonar case. Even assuming this is true, it has long been established that a party cannot waive objections to subject matter jurisdiction, whether by express consent or by conduct. *Jackson v. Ashton*, 8 Pet. 148, 8 L.Ed. 898 (1834); *Bialac v. Harsh Building Co.*, 463 F.2d 1185, 1186 (9th Cir.1972).

Since the Schottlands are also citizens of Pennsylvania, both actions in which ABPI–Del. is a party must be dismissed. In the Bonar action, ABPI–Del. is an indispensable party whose joinder and alignment defeats diversity. Consequently, all of the above consolidated actions must be dismissed for lack of subject matter jurisdiction.