**HARRIS TRUST AND SAVINGS BANK**

v.

**ENERGY ASSETS INTERNATIONAL CORPORATION, et al.**

**Civ. A. No. 88–4855.**

United States District Court,
E.D. Louisiana,
Section "G".

Feb. 6, 1989.

## MEMORANDUM AND ORDER

SEAR, District Judge.

This is a civil action in which plaintiff, Harris Trust and Savings Bank ("Harris"), seeks a declaratory judgment that its rights to proceeds and products from certain oil and gas leases ("subject leases") prime the rights of defendants, Energy Assets International Corporation ("Energy Assets") and certain other parties.

On September 10, 1984, Energy Assets and Cashco Oil entered into a Participation Agreement covering the subject leases in which Cashco Oil and Cashco Energy owned undivided interests. Cashco Energy ratified the Participation Agreement. Under the terms of the Participation Agreement, Energy Assets agreed to advance to Cashco Oil $20,000,000 and to pay up to $10,000,000 of certain completion and equipping costs in exchange for assignments to Energy Assets of certain working interest and a production payment by the Cashco parties. The assigned working interest and production payment entitle Energy Assets to receive a specified portion of income attributable to the Cashco parties' interest in the subject leases.

On January 22, 1987, Cashco Oil executed a collateral mortgage in favor of Harris to secure loans in the original principal sum of $12,000,000, of which $11,301,-191.26 is allegedly currently outstanding. On that same date, Cashco Energy also gave a collateral mortgage and a continuing guarantee in the amount of $12,000,000 to Harris to secure loans made by the bank to Cashco Oil. The collateral mortgages allegedly cover the interests of Cashco Oil and Cashco Energy in the subject leases. The Participation Agreement permits Cashco to mortgage its interests in the subject leases if certain conditions are met. Harris contends that the conditions have been met and that the effect is to create an encumbrance that primes the interests acquired by Energy Assets pursuant to the Participation Agreement.

On November 3, 1988, Harris filed this suit against Energy Assets and certain partnerships seeking a declaration that the defendants' interests in the subject leases and the products and proceeds therefrom are covered by the collateral mortgages and subordinate to the interests of Harris in the subject leases.

Harris did not name either Cashco Oil or Cashco Energy as parties to the lawsuit. The joinder of these parties as either plaintiffs or defendants would destroy the diversity jurisdiction of this court.

Energy Assets has filed this motion alleging that the Cashco parties are "indispensable" parties to a just adjudication of the claims asserted here by Harris, and since joinder would destroy diversity, I should dismiss this suit without prejudice.

Harris claims that under Fed.R.Civ.P. 19, Cashco is not even a "necessary" party, much less an "indispensable" party. Alternatively, in their supplemental memorandum, Harris asserts that I have jurisdiction over this matter under 43 U.S.C. § 1349 and therefore, Cashco can be added without destroying jurisdiction of this court.

Federal Rule of Civil Procedure 19(a) provides that a nonparty is considered necessary and must be joined in the suit whenever feasible if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substan-

tial risk or incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Courts applying this rule to cases requiring contractual interpretation have held that "there is a general rule that where rights sued upon arise form a contract, all parties to it must be joined". *Ward v. Deavers*, 203 F.2d 72, 75 (D.C.Cir.1953).

One of the purposes of Rule 19 is to avoid duplicative litigation. *Schutten v. Shell Oil Company*, 421 F.2d 869 (5th Cir. 1970). Harris seeks an interpretation of certain agreements under which the Cashco parties are obligors. It is the Cashco parties that will ultimately have to perform under these agreements, not Energy Assets or Harris. Thus, absent the Cashco parties' joinder, whichever party prevails in the present suit will be left in essence with a determination of rights binding on the other party but not binding upon the absentees who will ultimately have to perform. Cashco could refuse to abide by the judgment between Energy Assets and Harris and relitigate the same issues all over again.

Plaintiff tries to overcome this argument by asserting that the doctrine of res judicata would be applicable to Cashco as a result of this suit because "Harris takes the identical position in this litigation that Cashco would if it was a party". *See* Plaintiff's Opposition at p. 3. This assertion is based on the conclusion by plaintiff that Cashco would benefit if a portion of the Harris mortgage was paid first out of the working interest percentage of the wells rather than Energy Assets being paid first because the mortgage is a personal obligation and the obligation to Energy Assets is a non-recourse obligation. Whether this is true or not, it is not the kind of "adequate representation" that the rule of res judicata envisions. In addition, the question of whether a party's interests are virtually representative of an interest of a non-party is one of fact for the court. *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987). These parties are basically in a debtor-creditor situation and I do not believe that the creditor is going to represent the debtor's interests in a suit against another creditor.

In support of its argument that there is no danger of relitigation, plaintiff submits the affidavit of Richard Vetter, Cashco's Vice–President, attesting to its willingness to abide by and be conclusively bound by any judgment rendered herein. Defendants assert that this is an impermissible attempt to manufacture diversity jurisdiction. In a similar situation, an action was dismissed for failure to join an indispensable, non-diverse party who had ratified the plaintiff's bringing of the action on their behalf. *Hanna Mining Company v. Minnesota Power & Light Co.*, 573 F.Supp. 1395 (D.Minn.1983), *aff'd* 739 F.2d 1368 (8th Cir.1984).

Defendants cite several cases for the proposition that the Cashco parties have interests relating to the subject of this action and that the disposition of this action in their absence may impair their ability to protect those interests. In one case, *Bonar, Inc. v. Schottland*, 631 F.Supp. 990 (E.D.Pa.1986), the court ordered Rule 19 joinder of a party to a contract where the plaintiff was asking the court to adjudicate rights concerning that contract. This case and the rest of the cases cited by the defendants indicate that where interpretation of a contract is involved, parties to that contract must be joined. *See Gellman v. Paul*, 85 F.R.D. 357 (S.D.N.Y.1980); *International Society for Krishna Con. v. New York Port Authority*, 425 F.Supp. 681 (S.D.N.Y.1977).

It is from these cases, and plaintiff has offered nothing to contradict this, that the Cashco parties are necessary parties under Fed.R.Civ.P. 19(a).

Clearly, on the basis of diversity jurisdiction, joinder is not feasible because the joinder of the Cashco parties as either plaintiff or defendant would destroy diversity jurisdiction.

Once a court determines that parties are necessary to an action and that joinder is not feasible, it must decide whether equitable considerations require that it proceed without those parties. As Rule 19(b) provides:

If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Energy Assets asserts that the circumstances of this case require dismissal under Rule 19(b). They claim that subjecting them to duplicative litigation and the risk of inconsistent contract interpretations and judgments would be manifestly unjust. Further, this risk of duplicative litigation cuts against the "interest the court has in seeing that insofar as possible the litigation will be both effective and expeditious". *Schutten v. Shell Oil Company,* 421 F.2d 869 (5th Cir.1970).

Further, Energy Assets claims that a judgment rendered in the Cashco parties' absence could prejudice them because a declaration that Energy Assets' rights are subordinate to the interests of Harris would necessarily include a finding that the mortgaged interests of the Cashco parties include the working interest and production payment assigned to Energy Assets. Therefore, it would be inequitable and prejudicial to make any finding as to the size and scope of the Cashco parties' interests in an action in which they are not parties.

In addition, Energy Assets claims that I cannot fashion the judgment to avoid any prejudice. Plaintiff claims that I can protect Harris Trust and Energy Assets by wording the judgment so as to require any receipt of monies by one party from Cashco contrary to the judgment to be turned over to the other. Even if I did this, the Cashco parties will still not be bound by my judgment and they will still have inconsistent obligations vis-a-vis these two parties.

Lastly, Energy Assets claims that Harris will have an adequate remedy in state court if I dismiss this case. That is absolutely true.

I find that the Cashco parties are indispensible parties under Rule 19(b). If the only basis for jurisdiction here is diversity, then this case should be dismissed for nonjoinder. However, in their supplemental memorandum, plaintiffs submit that I also have jurisdiction under 43 U.S.C. § 1349. If this is true, then the Cashco parties should be joined, but the case should not be dismissed.

43 U.S.C. §§ 1331–1356 is the Outer Continental Shelf Lands Act. 43 U.S.C. § 1349(b), governing jurisdiction, provides:

(1) Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter.

Under the Partnership Agreement between Energy Assets and Cashco, Energy Assets agreed to advance to Cashco $20,000,000 and to pay up to $10,000,000 of certain completion and equipping costs in exchange for assignments to Energy Assets of certain Working interest and a production payment. The assigned working interest and production payment entitle Energy Assets to receive a specified portion of income attributable to Cashco's interest in certain oil, gas and mineral leases. One of the assignments affects three Louisiana state oil, gas and mineral leases and the second assignment affects and Oil and Gas Lease of Submerged Land under the Outer Continental Shelf Lands Act. The mort-

gages held by Harris allegedly affect the leases covered by these two assignments.

Harris asserts that the assignment pertaining to the offshore properties is a sufficient basis for federal jurisdiction and that I have jurisdiction over the assignment concerning the state leases under the doctrine of ancillary jurisdiction because the assignments "derive from a common nucleus of operative fact", and the claims are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding". *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966).

■ Harris cites several cases for the assertion that "a dispute as to the right to proceeds from the sale of minerals produced on the outer Continental Shelf [should] be heard in federal court". *See* Plaintiff's Supplemental Memorandum at p. 2. The first is *Laredo Offshore Constructors, Inc. v. Hunt Oil Company,* 754 F.2d 1223 (5th Cir.1985). *Laredo* involved a dispute concerning a contract to construct a stationary offshore platform on the Outer Continental Shelf. The dispute basically involved whether the platform was constructed improperly. The court found that jurisdiction under 43 U.S.C. § 1349 did exist because the contract was "intimately connected with an operation on the Outer Continental Shelf which involved the exploration, development, or production of subsurface resources". *Laredo* at p. 1229. The *Laredo* court cited several other contract cases to which OCSLA was applicable. *See e.g., Wallace v. Texaco, Inc.,* 681 F.2d 1088 (5th Cir.1982) (contract for labor on fixed platform); *Dickerson v. Continental Oil Co.,* 449 F.2d 1209 (5th Cir.1971) (indemnity provision in drilling contract), *cert. denied,* 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972); *Greer v. Services, Equipment & Engineering, Inc.,* 593 F.Supp. 1075 (E.D. Tex.1984) (indemnty provision in master-servant contract); *Fluor Ocean Services, Inc. v. Rucker Co.,* 341 F.Supp. 757 (E.D. La.1972) (contract to raise drilling platform which had sunk to the ocean floor). *Cf. Gulf Offshore Co. v. Mobil Oil Co.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784

(1981) (stating in dicta that states have concurrent jurisdiction over "contract actions" arising under the OCSLA).

The issue of what types of contracts are within the federal courts' jurisdiction under OCSLA was recently certified to the Fifth Circuit. In *Amoco Production Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202 (5th Cir.1988), the Fifth Circuit held that it had jurisdiction over a dispute between a natural gas buyer and seller over "take-or-pay" and "minimum-take" provisions of natural gas sale/purchase contracts. The court reasoned as follows:

> Any dispute that alters the progress of production activities on the OCS threatens to impair the total recovery of the federally-owned minerals from the reservoir or reservoirs underlying the OCS. Such a dispute was intended by Congress to be within the grant of federal jurisdiction contained in SEc. 1349. We determine that the record is sufficient to conclude that the controversy concerning performance of take-or-pay and minimum-take obligations under these contracts is just such a dispute.
>
> Exercise of take-or-pay rights, minimum-take rights, or both, by Sea Robin necessarily and physically has an immediate bearing on the production of the particular well, certainly int he sense of the volume of gas actually produced. Dispute by the parties of their respective rights, duties, defenses, and obligations is thus a controversy "arising out of, or in connection with (A) any operation ... which involves exploration, development, or production of the minerals...." Sec. 1349(b)(1).

*Amoco Production* at p. 1210.

The reason the court exercised jurisdiction was because the dispute affected actual "production" on the OCS. The dispute in the present case basically concerns a priority dispute between the holders of the mortgage covering the leases and the assignees of the subject leases. The fact that one of the assignments involves an oil and gas lease under the OCSLA does not make this dispute one "arising out of, or in connection with (A) any operation ...

**120**

which involves exploration, development, or production of the minerals ...", 43 U.S.C. § 1349, as interpreted by the Fifth Circuit.

Accordingly, I find that this action is not within your jurisdiction under 43 U.S.C. § 1349. In addition, I find that the Cashco parties are "indispensible" parties and their joinder would defeat diversity jurisdiction.

IT IS ORDERED that defendant's motion is GRANTED and that this action be dismissed without prejudiced.